TREAT *against* BARBER and another.

Where the question on the trial of an action of trespass *de bonis asportatis,* brought by *A* against *B.,* was, whether a previous sale of the goods from *C.* to *A.* was *bona fide* and for valuable consideration; *A.* claiming, that the consideration was a debt due by note to her from a manufacturing company, which *C.* had received of her, promising to account with her for it, offered *D.* to testify, that he had seen on the note-book of the company, kept by *C.,* as their agent, and from time to time exhibited to them, an entry of such note, particularly describing it; it was held, that the testimony of *D.,* and the books themselves, were inadmissible; the former being in the nature of hearsay, and further exceptionable as going to shew the contents of a writing, and the latter being *res inter alios acta.*

Where the defendant in such action, to repel the proof of consideration adduced by the plaintiff, offered evidence to prove, that a considerable note and mortgage had been given by *C.* to the plaintiff, after the time when, as she claimed, the debt for which the goods were sold, accrued, and before such sale; it was held, that such evidence was admissible, as having a bearing, though a remote one, on the matter in issue.

In trespass for the taking of goods, alleged in the declaration to be of a certain value, the damages to be assessed, if the plaintiff recover, so far as they depend on the value of the goods, are to be restricted to the value alleged.

But the circumstances which accompany and give character to a trespass, may always be proved, to nhance the damages beyond the pecuniary loss sustained by the plaintiff.

Therefore, where it appeared, in an action of trespass *de bonis asportatis*, that the defendant opened the chest of the plaintiff, containing her wearing apparel, and made use of language in relation thereto, that wounded her feelings; it was held, that these circumstances were proper to be considered in assessing the damages.

If *A.* intermingle his goods with those of *B.*, without confusion, in such a manner that *A.* alone can distinguish them, and an attaching creditor of *B.* request *A.* to select his goods, which he refuses to do ; this alone will not justify such creditor in taking *A.*'s goods with those of *B.*

But if *A.*, fraudulently, and with the intention of frustrating the attachment of *B.*'s creditor, intermingle his goods with those of *B.*, so as to be inseparable by such creditor, the latter may justify the taking of them.

*Windham, July, 1828.*

Treat
*v.*
Barber.

THIS was an action of trespass *de bonis asportatis ;* tried at *Brooklyn, January* term, 1828, before *Lanman, J.*

The plaintiff claimed title to the goods mentioned in the declaration, by purchase from her father, *Amos Treat, bona fide* and for a valuable consideration. The defendant *Barber,* by the instrumentality of the other defendant, an officer, had attached them and removed them, as being still the property of *Amos Treat ;* and claimed, that if he had sold any of them to the plaintiff, the sale was fraudulent as against creditors.

To shew that the sale of the goods from *Amos Treat* to the plaintiff was *bona fide* and for a valuable consideration, the plaintiff stated, that in the year 1815, she took a note against *The Industry Manufacturing Company,* given by her father as agent, for money loaned ; and that in the year 1817, her father received that note from her for his own use, to account with her for the avails. To prove the existence of her debt against the company, the plaintiff offered the testimony of *James Treat,* a member of the company, that he had seen on the note-book of the company, kept by the plaintiff's father, and from time to time by him exhibited to the company, a statement of the date and amount of the note, as due to the plaintiff, and of the time of its payment ; but that he had no other knowledge of the existence of the debt. The note-book was shewn in court. *Amos Treat* was an admissible witness, and was present in court, but was not called on. Under these circumstances, the defendants objected to the testimony of *James Treat ;* but the judge overruled the objection, and admitted it.

To repel the evidence adduced by the plaintiff of her father's indebtedness to her, on account of said note, the defendants offered evidence to prove, that on the 28th of *December*, 1825, a short time before the alleged sale, *Amos Treat* gave his note to the plaintiff for 600 dollars, for a legacy due to her from him, as executor of *Dorothy Stanton*, and mortgaged his real estate to secure it.   This evidence, on the objection of the plaintiff, was rejected.

Some of the witnesses having testified, that a part of the goods named in the declaration were of greater value than they were therein stated to be ; and the plaintiff having claimed, that the jury should estimate the damages accordingly ; the defendant claimed and prayed the judge to instruct the jury. that they were not at liberty, in estimating the damages, to consider such goods as of any greater value than that affixed to them in the declaration ; but the judge omitted so to charge the jury.

It appeared, that when the goods were taken by the defendants, they opened a chest of the plaintiff, containing her wearing apparel, without taking therefrom, however, any of the articles specified in the declaration ; and that the defendants then made use of language to the plaintiff. in relation to the contents of the chest, calculated to wound her feelings.   She therefore claimed, that on account of this transaction, she was entitled to greater damages.   The defendants resisted this claim, and prayed the judge to instruct the jury, that the plaintiff, under the present declaration, could not recover any damages on this ground.   The judge omitted so to instruct the jury.

The defendants introduced evidence to shew, that if the plaintiff owned *bona fide* any of the goods attached, she had mingled them with her father's goods, so that she alone could distinguish them ; and that, at the time of the attachment, the defendants requested her to select such goods as belonged to her ; but that she refused to make such selection, claiming the whole as her own.   The defendants, therefore, prayed the judge to instruct the jury, that if the goods of *Amos Treat* were so intermixed with the plaintiff's, and she refused to select her goods, claiming the whole to belong to herself, the defendants were not liable as trespassers for taking the plaintiff's goods thus circumstanced.   But the judge did not so instruct the jury.

The plaintiff obtained a verdict ; and the defendants moved for a new trial, for the admission of the evidence offered by the

plaintiff, for the rejection of that offered by the defendant, and for a misdirection.

*Windham*, July, 1828.

Treat
*v.*
Barber.

*Strong* and *Morgan*, in support of the motion, contended, 1. That the testimony of *James Treat* was inadmissible to prove the existence of the debt from the *Industry Manufacturing Company* to the plaintiff; it being but hearsay, so far as the admissions of the members of the company extended; and the entries in their books, though evidence against them, could not be so against the defendants in this action.

2. That the testimony as to the note and mortgage, given by *Amos Treat* to the plaintiff, after the time when it was claimed the debt for which the goods were sold, accrued, and before such sale, should have been admitted; as it *conduced* to prove, that there had been a settlement between them, and so the account for money loaned was extinguished.

3. That the jury should have been instructed, that in the assessment of damages, they could not consider the goods to be of greater value than the plaintiff in her declaration had alleged them to be. It was essential that the declaration should state the goods to be of some value; and even if not essential, the averment being made, the plaintiff was as much limited by it, as by the averment as to the quantity or kind. 1 *Chitt. Plead.* 362, 3. 2 *Chitt. Plead.* 370. n. *Com. Dig. tit.* Pleader. 3 M. 1. 3 *Stark. Ev.* 1531. 1550. 1565.

4. That there being no matters of aggravation alleged in the declaration, nor even the general allegation of *alia enormia,* the plaintiff was not at liberty to claim increased damages on account of any insulting language of the defendants, nor on account of the opening of the chest, the latter being a distinct act of trespass. 1 *Chitt. Plead.* 388. 1 *Swift's Dig.* 652. 1 *Tidd's Pract.* 391.

5. That the plaintiff having wrongfully intermingled her goods with those of *Amos Treat,* which the defendants had right to take, in such a manner that she only could distinguish and separate them; and having refused to make such separation; she cannot claim, that the defendants were trespassers, if, by mistake, they took some of her goods. 2 *Bla. Com.* 405. 1 *Swift's Dig.* 172. *Com. Dig. tit.* Pleader. 3 M. 28.

*Goddard,* contra.

*Windham,*
*July, 1828.*

Treat
*v.*
Barber.

Hosmer, Ch. J.   1. The admission of the testimony of *James Treat* raises the first question in the case.

The presence of *Amos Treat* I lay out of the question.   The plaintiff was under no obligation to rely on his testimony, but had a right to resort to any other, conducing to prove the existence of the debt.   As against the defendants, neither the books of the company, nor the testimony of *James Treat*, was legal evidence.   It stands on no higher ground than mere hearsay.   A case may be supposed, in which the above-mentioned books would be good evidence against *Amos Treat* and the *Industry Manufacturing Company*, as being their recognized act and declaration.   But as against a third person, the books are no more admissible than the parol declarations of the company or of *Treat*.   They are *res inter alios acta*.   It is almost superfluous to say, that those books are not public records, to serve as the memorial of facts ; but they are the private entries of the company.

The testimony of *James Treat*, except to identify the books, was likewise inadmissible, even if *they* were legally competent. They must speak for themselves ; and evidence of what appeared on their pages, could not come from the mouth of a witness.

2. It was next made an objection by the defendant, that the court refused to admit as evidence a note and mortgage, given by *Amos Treat* to the plaintiff, after the time when it was claimed the debt for which the goods were sold, accrued.

Whether some inference might not arise out of this transaction bearing on the matter of controversy, is the question ; and I am inclined to think, that, although remote, it was of this tendency ; and that the facts should have been laid before the jury. *Gibson* & al. v. *Hunter*, 2 *H. Bla.* 187.   The proof, it is true, would not rise high ; but if it conduced to evince any thing in issue, it ought to have been received.

3. Some of the witnesses testified, that the goods in question were of higher value than that which was assigned to them in the plaintiff's declaration ; and the defendant prayed the court to instruct the jury, that in the estimate of damages they could not go beyond the value by the plaintiff alleged ; but on this head the court omitted to charge them.

The plaintiff, if he obtain judgment, can only recover *secundum allegata*, unless his allegation is entirely superfluous.   It is correctly said by *Starkie :* " It seems, indeed, an universal

rule, that a plaintiff or prosecutor shall, in no case, be allowed to transgress those limits, which, in point of description, limitation and *extent*, he has prescribed for himself ; he selects his own terms, in order to express the nature and extent of his charge or claim ; he cannot, therefore, justly complain, that he is limited by them." 3 *Stark. Ev.* 1531. The affixing of a value to goods, in an action of trespass, is necessary and not superfluous, although an omission to make this allegation, is cured by verdict. *Strode* v. *Hunt,* 2 *Lee.* 230. *Bertie* v. *Pickering* & ux. 4 *Burr.* 2455. *Wood* v. *Smith, Cro. Jac.* 129 *Usher* v. *Bushel,* 1 *Sid.* 39.

The court should have charged the jury, that beyond the allegation of value affixed in the declaration they could not allow damages, whatever might be the actual value of the goods.

4. At the time of the trespass committed, the defendants opened a chest belonging to the plaintiff, and made use of language in relation to the contents of it, that wounded her feelings ; and the facts having been proved, an increase of damages was demanded on this account. The defendants prayed the court to charge the jury, that they could not augment the damages on this ground ; but the judge omitted to give them any instruction on this subject.

" It is always the practice," said *Le Blanc,* J. in *Bracegirdle* v. *Orford,* 2 *Mau. & Selw.* 79. " to give in evidence the circumstances, which accompany and give a character to a trespass ;" and that is the case relative to the evidence before us. The jury are not bound down to give the mere pecuniary loss sustained by the plaintiff, but may award damages for the malice and insult attending a trespass. In an action for breaking and entering the plaintiff's close, and searching for game, he was permitted to prove, that the defendant, on being warned off the plaintiff's land, used very intemperate language, and threatened to commit him ; (*Merest* v. *Harvey,* 5 *Taun.* 442.) and yet no matter of aggravation was alleged. The same principle was recognized, by this court, in *Edwards* v. *Beach,* 3 *Day* 447. and in *Churchill* v. *Watson,* 5 *Day* 140. There are instances where the damages do not necessarily arise from, or accompany, the act complained of, which, notwithstanding, are allowable, but which, in order to prevent surprise on the defendant, must be particularly alleged in the declaration. 1 *Chitt. Plead.* 386, 7, 8. The abuse to the plaintiff, however,

by searching her chest, and indulging in improper remark, at the time and in the manner mentioned, was an aggravation of the trespass coetaneously existing with it, and serving to shew the malice, with which her legal rights were violated.

5. The plaintiff, at the time the goods before-mentioned were attached, claimed all that was in her possession, and refused to make a selection between what were really hers, and what were attachable by the defendant *Barber*. This intermingling of the goods that belonged to the plaintiff with those that she held in fraud of creditors, it is contended, justified the defendants in their transgression, as they were incapable of making a separation.

The doctrine of confusion of goods, derived from the civil law, has been referred to, as sanctioning the objection ; but it is not applicable. Confusion, as it is termed, is a mixture of liquids, as wine and wine, or wine and honey, or melted silver and gold. *Wood's Inst.* 158. And within the same reason is the intermixture of money, or coin, or hay, that forms one undistinguishable mass. 2 *Bla. Comm.* 404. But the placing of crockery, china or other articles resembling each other, on the same shelf, is not a confusion of them, within the meaning of the law. Were it so, the defendant *Barber* might have held all the property taken by his attachment, if there were a fraudulent intermixture, as being the goods of his debtor.

If, however, the plaintiff fraudulently, and with the intention of frustrating the defendant's attachment, had caused her goods and those of *Amos Treat* to be intermingled, so as to be inseparable by the attaching creditor, the defendant might justify the taking of them. 2 *Rol. Abr.* 566. *l.* 15. 2 *Bulstr.* 323. *Ward* v. *Ayre*, *Cro. Jac.* 366. *Gordon* v. *Jenney*, 16 *Mass. Rep.* 465. 470. Otherwise, the plaintiff would derive an advantage from her own wrong. But nothing of this kind appears in the present case. The intermingling, for aught that is stated, was casual or accidental, and without any design of covering the goods.

The specific objection is, that the plaintiff would not make the requested discrimination. As a matter of courtesy, if she had admitted, that part of the goods were not her property, she ought to have done it ; and I think she would be under a moral obligation to do so. But she claimed the whole, and probably thought she had a valid title. The omission to give the requisite information, was neither a fraud, nor the vi-

olation of any obligation by law put upon her.  Under the *Windham*, circumstances of the case, the defendants acted at their peril; and the omission to charge the jury, is not the subject of complaint.

On the whole, for the errors specified in the three first objections, a new trial must be granted.

The other Judges were of the same opinion, except BRAINARD, J., who was absent.

New trial to be granted.