### CLAFLIN et al. v. BEAVER et al.

#### (Circuit Court, S. D. Ohio, E. D. May 1, 1893.)

#### No. 228.

1. CONFUSION OF GOODS—LIMITS OF DOCTRINE.

    The doctrine of confusion of goods is not in any case to be carried further than necessity requires, and is only applied in cases where chattels, such as corn or wheat, not capable of being identified, and owned by different persons, have been fraudulently intermingled by the wrongdoer. It has no application if the goods can be separated, even though the act of mixing was fraudulent.

2. REPLEVIN—WRONGFUL SEIZURE—EVIDENCE—CONFUSION OF GOODS.

    Two lots of dry goods were taken in replevin by the sheriff. In the selection of the first lot the goods were identified as described in the invoices made out by the plaintiffs, and in the hands of their agent, who was present at the execution of the writ, goods not identified as those described in the invoices being returned to stock. In taking the second lot goods were taken indiscriminately from the stock which was in the possession of the defendants. Held that, as the evidence showed that it was possible to distinguish the goods, not only by their appearance, but by marks, the doctrine of confusion of goods could not apply, and the plaintiff could not justify the taking of the second lot on the ground that his goods had been fraudulently intermingled by the wrongdoer.

At Law. Action of replevin by H. R. Claflin & Co. against A. M. Beaver, Myrtie Beaver, George Melvin, and B. H. Milliken. On rehearing.

Kramer & Kramer, for plaintiffs.
H. B. Maynard, for respondents.

SAGE, District Judge. This case is before the court on rehearing of the collateral issue framed under the order made by Judge Severens. Claflin v. Beaver, 35 Fed. Rep. 259.

The objection that the court had no right to make that order was fully considered and overruled in Claflin v. Beaver, 41 Fed. Rep. 204, 206, and will not now be reconsidered.

There remain to be disposed of one question of fact and one of law.

Depositions have been submitted on behalf of plaintiffs in support of their contention that the goods claimed by the assignees of Beaver & Co. were purchased by Beaver & Co. from the plaintiffs, and not paid for, and depositions on behalf of defendants in support of the claim set forth in the petition filed under Judge Severens' order. Without entering upon a review of the testimony of the witnesses, it is sufficient to say that the preponderance of evidence is against the plaintiffs. It is contradicted not only by the testimony of A. M. Beaver, defendant, but also by that of the assignees Melvin and Millikin, Millikin then being a merchant of Washington C. H., from whom a part of the stock was purchased; Silcott, also a merchant of Washington C. H., and one of the appraisers selected by the marshal; and Ridgway, dry goods clerk employed by the marshal to assist in the execution of the writ. All these witnesses, with the exception of the defendant Beaver and possibly Melvin and Millikin, to the slight extent of their interest as assignees, are disinterested. They were all present when the goods were taken in replevin by the marshal. They testify that in the selection of the first lot of goods taken, which amounted to about $1,900, and which were identified as described in the invoices of sale made out by the plaintiffs and in the hands of Leopold Cohn, their agent, who was also present at the execution of the writ, goods not identified as those described in the invoices were returned to stock; but when it came to taking the second lot,—that is, the lot described in the assignees' petition under the collateral issue,—there was no effort at or pretense of identification, nor was there any reference to the invoices nor to the description contained in the writ. To make up in value the amount of plaintiffs' claim, goods were taken indiscriminately from the stock which was in the possession of the assignees, the only care being to select the best. Their testimony is that none of the goods described in their schedule, which is attached to and made part of their petition, were included in the fraudulent purchase; that some of them were purchased from other parties, and that such as had been purchased from the plaintiffs were fully paid for before the commencement of this action. This statement of their testimony is taken from the opinion of the court reported in Claflin v. Beaver, 41 Fed. Rep. 204, and from depositions since filed, which strongly contradict the testimony of the principal witness for the plaintiffs. Their evidence has much more weight with the court than the testimony introduced on behalf of the plaintiffs. The findings of fact, therefore, made by the court in that opinion are affirmed.

But it is claimed that under the doctrine of confusion of goods the plaintiffs had the right to take merchandise of the same general description and value from the stock at large. This claim is not well founded. Confusion of goods takes place when, upon the

proof, it appears that the property of each of the parties interested cannot be distinguished. If the goods can be separated, no change of property takes place, even though the act of mixing was fraudulent. The doctrine is applied in cases where chattels, such as corn or wheat, not capable of being identified, owned by different persons, have been fraudulently intermingled by the wrongdoer. It is not in any case to be carried further than necessity requires. Bigelow, Frauds, 576; Hesseltine v. Stockwell, 30 Me. 241; Moore v. Bowman, 47 N. H. 501. The testimony in this case shows that it was possible to distinguish the goods, not only by their appearance, but by marks; and that care was taken, in selecting the first lot, to return to stock goods not mentioned in the writ, and that in the selection of the second lot no such care was exercised, but goods were taken indiscriminately. That the goods were incapable of identification is not claimed even by the plaintiffs, for the witness on whose testimony they place their chief reliance, and who was at one time a member of the firm of Beaver & Co., and was their buyer, undertook, from an alleged inspection in the store after the assignment was made,—which turns out to have been much less extended and thorough than represented in his deposition,—and from a subsequent inspection after they had been shipped to Kenton, Ohio, and there unboxed, to identify them as goods purchased from the plaintiffs, and not paid for. However, he was so overwhelmingly contradicted as to other matters by witnesses called by the defendants that little or no credit can be given to his statements. The testimony that the value of the goods claimed by the assignees was as stated in the opinion reported in 41 Fed. Rep. 204, preponderates, notwithstanding the evidence introduced by plaintiffs tending to establish a lower value. Judgment will be entered in favor of the assignees for the sum of $2,469.84, with interest from March 16, 1886, as found in the opinion last above referred to; and, as there directed, judgment will be entered in favor of the plaintiffs upon the verdict for the residue of the goods taken by the marshal in the execution of the writ of replevin. The costs of the case, down to and including the trial before Judge Severens, will be taxed against the defendants. The costs of the supplementary proceedings upon the defendants' petition will be taxed against the plaintiffs, as directed in that opinion.