KEVIE CARMEN *vs.* HENRY L. HIGGINSON & others.

Suffolk.     December 11, 1922. — June 5, 1923.

Present: RUGG, C.J., DeCOURCY, CROSBY, PIERCE, & CARROLL, JJ.

*Bills and Notes,* Foreign bill of exchange: presentment, notice of dishonor, waiver of demand and notice. *Waiver. Damages,* For breach of contract.

In an action of contract against a firm of private bankers, with a declaration in two counts, the first count against the defendants as drawers of a bill of exchange payable at a bank in Petrograd, Russia, and the second count for the price paid for the bill as money had and received to the plaintiff's use, the following facts appeared: The bill was purchased on November 1, 1917, and named no due date. On the day of purchase and ever since there were funds in the drawee sufficient to meet the bill. Two weeks later the plaintiff forwarded it to a bank in Russia for collection and at that time the Russian government was stable. On December 27, all banks in Petrograd were seized by the Bolsheviks and remained closed for about six weeks. The drawee bank re-opened in February, 1918, but withdrawals of foreign accounts were prohibited, so that, when on February 18 the draft was presented, payment was refused. There was no evidence of any formal protest, although protest could have been made in accordance with G. L. c. 107, § 176, by a respectable resident in the presence of witnesses; and no evidence was offered of the Russian law of protest. On February 22 the plaintiff received a cable to the effect that the draft was being returned. This he showed to the defendants, who advised him to wait until the draft was returned. In October the draft was received back by the plaintiff, who took it to the defendants on October 28. The defendants thereupon in writing on November 5 offered to " refund . . . the equivalent of " the roubles at the rate on October 28 or buy him the number of roubles on the face of the bill if he preferred. The plaintiff refused the offer. On or about February 18 Russian roubles were quoted in Boston and New York at $.13 for sight drafts, but the quotations were nominal. Exchange being forbidden in Russia, no bills of exchange on Petrograd were actually issued at that time. *Held,* that

(1) The instrument was a foreign bill of exchange;

(2) The transaction was a completed contract, constituting a sale of credit by the defendants to the plaintiff, and the defendants contracted that the bill would be accepted by the drawee on presentment and would be paid when due, and that, if it was not so paid, they upon due notice would reimburse the holder in principal, interest and damages;

(3) Having no specific due date, the bill was payable on demand if presented within a reasonable time;

(4) Even applying the rule in this Commonwealth that, where one is under no existing liability upon a contract for want of demand and notice of dishonor on a negotiable instrument, and it is sought to establish liability

by admission or waiver, the proof must be clear and distinct, a conclusion was warranted that the defendants by their conduct had waived notice of dishonor and protest;

(5) It being conceded that presentment was made within a reasonable time, the plaintiff was entitled to recover under G. L. c. 107, § 9, the current rate of exchange on the date of presentment and demand, with interest from that date and damages at the rate of five per cent upon the principal. No greater liability can be imposed by a waiver than if the things waived had been fully performed.

CONTRACT against copartners doing business as Lee, Higginson and Company, with a declaration as amended in two counts, the first count against the defendants as drawers of a foreign bill of exchange for ten thousand roubles drawn on a bank in Russia, and the second count for the amount paid to the defendants for the bill, as money had and received to the plaintiff's use. Writ dated June 28, 1919.

In the Superior Court, the action was heard by *McLaughlin,* J., without a jury. The judge found that on or about February 18, 1918, gold roubles were worth $.5146 in United States money, and that Russian exchange at that time was quoted in Boston and New York at $.13 for sight drafts and $.1325 for cable transmission. The quotations were nominal. Because of the conditions in Russia, described in the opinion, no bills of exchange were issued or drawn in the United States on Petrograd at that time; and at the same time in Petrograd the issue of bills of exchange drawn on foreign countries, including the United States, was forbidden. All exchange of Russian money for or on account of the United States and of United States money for Russian money was forbidden in Petrograd at that time.

The draft upon which the action was brought was as follows:

" Rbls. 10,000 00/100          Boston, November 1, 1917.
                    Russian Bank for Foreign Trade
                          Petrograd, Russia
Pay to the order of Kevie Carmen
Ten thousand roubles
No. A 1241          ·          [Signed] Lee, Higginson & Co.
                    Checque against funds."

The letter of the defendants to the plaintiff, referred to in the opinion, read as follows:

" On October 28th you returned to us a draft drawn by Lee, Higginson & Co. on the Russian Bank for Foreign Trade for Rbls. 10,000, dated November 1, 1917, stating that you had presented this draft through your agents, and that payment was refused.

" We will therefore refund to you the equivalent of Rbls. 10,000 at the rate for roubles on date on which you returned our draft viz., October 28, 1918. This rate, according to quotations at hand, was fourteen cents (14c). Rbls. 10,000 at 14c is $1,400.

" As our obligation in this matter was to give you roubles, we will buy Rbls. 10,000 for you in place of American dollars, if you so like.

" Will you kindly advise us your wishes in the matter."

Other material facts are described in the opinion.

The plaintiff contended in the Superior Court that he was entitled to recover at the rate of $.5146 per rouble, plus interest and ten per cent of the principal, under the rule of *Grimshaw* v. *Bender*, 6 Mass. 157, and the defendants contended that they were not liable at all in this action, and that, if they were liable, it was only for an amount computed as prescribed in G. L. c. 107, § 9. The judge found for the plaintiff in the sum of $1,300 with interest from February 18, 1918, and damages at the rate of five per cent upon the principal, in all, $1,669.31, under G. L. c. 107, § 9; and at the request of both parties reported the action to this court under the following stipulation: (1) If the judge was right in finding for the plaintiff, and if he had applied the correct measure of damages, judgment was to be entered on the finding, with interest from the date of this report, and with costs; (2) if the judge was right in finding for the plaintiff, but applied a wrong measure of damages, judgment was to be entered for the plaintiff in such sum as this court should order, with costs, and, (3) if the judge was wrong in finding for the plaintiff, judgment should be entered for the defendants, with costs.

G. L. c. 107, § 9, is as follows: " When a bill of exchange,

drawn or endorsed within this Commonwealth and payable beyond the limits of the United States, is duly protested for non-acceptance or non-payment, the party liable thereon shall, on due notice and demand, pay it at the current rate of exchange on the date of the demand, with interest from the date of the protest and damages at the rate of five per cent upon the principal thereof; and the amount of principal, interest and damages shall be in satisfaction of all charges, expenses and damages."

*J. B. Studley*, (*W. E. Fuller* with him,) for the plaintiff.

*F. D. Putnam*, (*C. A. Coolidge, Jr.*, with him,) for the defendants.

RUGG, C.J. This is an action of contract. The case comes before us by report wherein the following facts appear. On November 1, 1917, the plaintiff bought of the defendants a draft on the Russian Bank for Foreign Trade, Petrograd, Russia, to the order of the plaintiff in the sum of ten thousand roubles. The price paid was at the rate of about twenty-eight and one half cents per rouble. On the date of purchase and ever since there were funds of the defendants in the Russian bank sufficient to meet the draft. Two weeks after the purchase the plaintiff forwarded the draft to the branch of the National City Bank at Petrograd for collection. When the draft was forwarded the government of Russia was stable, but when the draft came to the possession of the branch of the National City Bank in Petrograd, or immediately thereafter, government was in a chaotic condition, all order was subverted and the usual processes of law, banking and commerce were abrogated. On or about December 27, 1917, the branch of the National City Bank and the Russian Bank for Foreign Trade, as well as all other banks in Petrograd, were seized by the Bolsheviks and remained closed for about six weeks. In the February following the Russian Bank for Foreign Trade was reopened as part of the Fourth Branch of the Peoples Bank, so called, but withdrawals or transfers of foreign accounts such as that of the defendants were in fact prohibited. The judge found that soon after the Russian Bank for Foreign Trade thus reopened and on or about February 18, 1918, the draft

here in question was actually presented for payment and payment refused or (if mistaken in this) that presentment failed because, although reasonable diligence was exercised, conditions made it impossible and hence presentment was excused. The last alternative of this finding is disregarded because there is no ground in the absence of report of the evidence to assume that there was error in the finding that there was actual presentment and refusal of payment. *Atlantic Maritime Co.* v. *Gloucester*, 228 Mass. 519, 522. Other findings are that protest could not have been made by a notary public, but it could have been made by a respectable resident in the presence of two credible witnesses. There was no evidence as to the law of Russia concerning the rights and duties of parties in the event of the non-acceptance or non-payment of a bill of exchange payable in Russia but drawn in another country. On February 22, 1918, the plaintiff received a cablegram from the National City Bank branch at Petrograd informing him that the draft was not collectible and that it was being returned to the sender. He immediately showed the cablegram to the defendants, who requested him to wait until the draft was returned. It arrived in October and on October 28, 1918, the plaintiff took it and the cablegram to the manager of the foreign exchange department of the defendants, who said he would take the matter up with the partners. On November 5, 1918, the defendants wrote to the plaintiff offering to refund the equivalent of ten thousand roubles at the rate when the draft was returned to them, or, since the obligation was to give roubles, to buy ten thousand roubles in place of American dollars, if he preferred.

On these facts the judge found that, if protest was required, the defendants waived it, and that they waived any right they had to insist that the plaintiff failed to forward the draft to Russia for presentment within a reasonable time after its issue.

The instrument sold by the defendants to the plaintiff and here in suit was a foreign bill of exchange. It was drawn in this Commonwealth and payable in a foreign country. It was in form a check drawn against funds on deposit to

the credit of the defendants in the Russian Bank for Foreign Trade. G. L. c. 107, §§ 149, 152, 208.

The transaction between the parties was a completed contract. It constituted a sale of credit by the defendants to the plaintiff, the bill of exchange being a means of establishing and transmitting the credit. The defendants as drawers contracted with the plaintiff as payee that the bill should be accepted by the Russian Bank for Foreign Trade as drawee and be paid by it on presentment at the time when it became due, and that, if not so paid, upon due notice, they would reimburse the holder in principal and damages. *Powers* v. *Lynch,* 3 Mass. 77. *Blanchard* v. *Russell,* 13 Mass. 1, 5. *Amsinck* v. *Rogers,* 189 N. Y. 252. This draft, having no specific due date, was payable on demand if presented within a reasonable time. G. L. c. 107, §§ 29, 167, 209. There is no contention that the presentment in February, 1918, was not made within a reasonable time.

This instrument, having been made in this Commonwealth, is governed by our law as to its meaning and effect. *Carnegie* v. *Morrison,* 2 Met. 381, 397. *Ross* v. *Ross,* 129 Mass. 243, 246. *Brandeis* v. *Atkins,* 204 Mass. 471, 476. *Shoe & Leather National Bank* v. *Wood,* 142 Mass. 563. It is provided by G. L. c. 107, §§ 175, 176, that a foreign bill of exchange must be protested for dishonor and that protest "may be made by 1. A notary public; or 2. By any respectable resident of the place where the bill is dishonored, in the presence of two or more credible witnesses." ·

There is no presumption that the provisions of our negotiable instrument act or of our common law in respect to the law merchant prevail in Russia. *Aslanian* v. *Dostumian,* 174 Mass. 328. *Cuba Railroad* v. *Crosby,* 222 U. S. 473, 479. The duties of the holder touching the time, manner and sufficiency of making protest and of giving notice of dishonor are determined by the law or custom of the place where the bill is payable. Whether the necessity of protest is to be determined by the place where the contract is made or by the place where the bill of exchange is payable has been the subject of divergent decisions. *Amsinck* v. *Rogers,* 189 N. Y. 252. *Rothschild* v. *Currie,* 1 Q. B. 43. *Hirsch-*

*feld* v. *Smith,* L. R. 1 C. P. 340.    *Horne* v. *Rouquette,* 3 Q.B.D. 514.    See in this connection *Powers* v. *Lynch,* 3 Mass. 77; *Williams* v. *Wade,* 1 Met. 82; *Worcester Bank* v. *Wells,* 8 Met. 107, 113; *Cribbs* v. *Adams,* 13 Gray, 597; *Shoe & Leather National Bank* v. *Wood,* 142 Mass. 563; *Glidden* v. *Chamberlin,* 167 Mass. 486; *Scudder* v. *Union National Bank,* 91 U. S. 406; *Pierce* v. *Indseth,* 106 U. S. 546.    It is not necessary to discuss that question or collateral and subsidiary questions connected with it in the case at bar, because on another ground the plaintiff can prevail.

The finding was that from the other facts found the inference was drawn that if protest was required it was waived and that notice also was waived.    There was an express finding of presentment and refusal of payment.    In this Commonwealth, where one is under no existing liability upon a contract for want of demand and notice of dishonor on a negotiable instrument, and it is sought to establish liability by admission or waiver, the rule has been held with some strictness that the proof must be clear and distinct.    " An unqualified admission of liability, or a direct promise to pay, which imports such admission, is evidence of the most satisfactory kind.    Evidence of circumstances or of conversations which are equivocal in their character, and which do not import a clear admission of liability, or amount to a distinct promise to pay, and which are consistent with the view that the " defendant is merely seeking to avoid or postpone a suit against himself, are not sufficient evidence to establish liability after it has been extinguished by want of demand or notice.    *Glidden* v. *Chamberlin,* 167 Mass. 486, 497.    *Creamer* v. *Perry,* 17 Pick. 332.    *Parks* v. *Smith,* 155 Mass. 26.    Within this strict rule it was competent for the court to infer a voluntary relinquishment of all rights growing out of the conditions which prevented payment of the draft at Petrograd.

The facts were communicated to the defendants as and when they became known to the plaintiff.    He waited at their request after receiving the cablegram until the draft itself was returned, when that also was handed to them. Manifestly they knew that they had received no notice of

non-payment or of protest such as is common under the law merchant. They saw when the draft was returned to them whatever it disclosed on its face. Thereafter they wrote to the plaintiff an explicit promise to refund the value of roubles in our money at current exchange, or at his option to hand him roubles. This offer was not accompanied by any reservations. It was not made subject to any conditions. While it was not an unequivocal promise to pay the draft according to its terms, it was fairly susceptible of the interpretation that the defendants recognized the hardship arising out of the unexpected conditions in Russia and waived whatever strictly legal rights they might have arising out of the impossibility or difficulty of compliance by the plaintiff with the usual requirements respecting foreign exchange. There was enough to warrant a finding of waiver. *Boyd* v. *Cleveland,* 4 Pick. 525. *Hough* v. *Loring,* 24 Pick. 254. *Matthews* v. *Allen,* 16 Gray, 594. *Harrison* v. *Bailey,* 99 Mass. 620. *Third National Bank of Boston* v. *Ashworth,* 105 Mass. 503. *Armstrong* v. *Chadwick,* 127 Mass. 156. *Corner* v. *Pratt,* 138 Mass. 446. *Hobbs* v. *Straine,* 149 Mass. 212. G. L. c. 107, §§ 132, 134.

The measure of damages is that prescribed by G. L. c. 107, § 9. Waiver of protest and notice cannot in reason impose a heavier liability than would have existed if the things waived had been fully performed. Waiver as applied to the case at bar was relinquishment of the defences arising out of failure to have the draft protested and notice thereof sent to the defendants. Stated in another way, the defendants by their waiver have agreed to stand as to liability on the same footing on which they would have stood if there had been protest and notice. Their waiver was equivalent to relieving the plaintiff of proof of that which but for the waiver he would have been required to prove. The plaintiff is found capable of recovering only on the ground of waiver of protest and notice. There was presentment and refusal of payment. There was no difficulty at the time and place of presentment about such a protest as would satisfy our statute. If the plaintiff relied upon compliance with foreign law as ground for failure of protest and notice

according to our law, the burden was on him to show it. From the standpoint of the plaintiff, he has been saved the burden of producing evidence by reason of the waiver. There is no sound ground on which to predicate any other or different measure of damages than that afforded by the statute.

There is nothing in any degree at variance with this conclusion in *Foreign Trade Banking Corp.* v. *Cosmopolitan Trust Co.* 240 Mass. 413. Waiver was not involved in that case.

The principle applied in *Grimshaw* v. *Bender*, 6 Mass. 157, has no relevancy to the facts here disclosed.

The plaintiff cannot recover on his count for money had and received the sum paid for the draft. *American Express Co.* v. *Cosmopolitan Trust Co.* 239 Mass. 249.

The facts here found are such as to render immaterial the factor that exchange between this country and Russia was interrupted in February, 1918. Therefore, there is no occasion to discuss decisions like *De Tastet* v. *Baring*, 11 East, 265; *In re Francke* v. *Rasch*, [1918] 1 Ch. 470, and *Simonoff* v. *Granite City National Bank*, 279 Ill. 248. The doctrine of frustration of the adventure, illustrated by cases like *Horlock* v. *Beal*, [1916] 1 A. C. 486, and *Scottish Navigation Co. Ltd.* v. *W. A. Souter & Co.* [1917] 1 K. B. 222, is not pertinent to the findings here made. It is not necessary to consider the other arguments presented in view of the basis of this decision.

In accordance with the terms of the report judgment is to be entered on the finding, with interest from the date of the report, and costs.

*So ordered.*