## BANQUE DE FRANCE v. CHASE NAT. BANK OF CITY OF NEW YORK.

## SAME v. EQUITABLE TRUST CO. OF NEW YORK.

### No. 381.

Circuit Court of Appeals, Second Circuit.

July 18, 1932.

See, also, 33 F.(2d) 202.

Evarts, Choate, Sherman & Leon, of New York City (George W. Wickersham, Maurice Leon, Joseph H. Choate, Jr., Herbert J. Bickford, Eugene J. Conroy, and Andre Maximov, all of New York City, of counsel), for appellant.

Rushmore, Bisbee & Stern, of New York City, for appellee Chase Nat. Bank of City of New York.

Milbank, Tweed, Hope & Webb, of New York City, for appellee Equitable Trust Co. of New York.

Henry Root Stern, George N. Hamlin, Wm. Dean Embree, and A. Donald MacKinnon, all of New York City, of counsel, for appellees.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

MANTON, Circuit Judge.

Appellees each received a shipment of bars of refined gold from the Garantie und Kreditbank fur den Osten, A. G., Hamburg, Germany, and this, by order and for the account of the State Bank of the Union of Soviet Socialist Republics. The shipment to the Chase Bank consisted of 204 bars of refined gold, 110 of which were produced by the Sverdlovsk Refinery and the balance at the Moscow Refinery; the shipment to the Equitable Trust Company contained 202 bars all of which were produced by the Moscow Refinery. While the bars were in the possession of each appellee in New York City in March, 1928, these actions were commenced to replevin the shipments. They were based upon the claim that this gold came into the possession of the appellees as part of a commingled mass of gold which was captured from the banks in Russia during the Bolshevik Revolution in 1917.

During the World War between February 5, 1915, and January 3, 1916, the appellant purchased in the open market ten million dollars in gold ingots from Russian banks and intrusted the ingots for safe-keeping to the State Bank of the Russian Empire at Petrograd, Russia, to be delivered after the war to appellant upon its demand. It is claimed that as a result of the Soviet Revolution in November, 1917, this gold was seized by the Bolsheviki and thereafter taken to Moscow and there commingled, with loss of identity, with other gold, so as to constitute one large mass from which the gold constituting the shipments in question was taken in Moscow and shipped to the respective appellees. The theory of the appellant is that, since there was a commingling and loss of identity, it is entitled to recover the gold constituting these shipments, whether or not such gold was the gold on deposit in the Petrograd Branch of the Imperial State Bank. The defense interposed contends that the nature of the deposits was such that the appellant did not acquire ownership or right to the possession of the specific gold received by the Imperial State Bank from the Russian private banks; that the gold constituting the shipments received by the appellees was not at any time commingled with that gold. It is further

claimed by appellees that the gold constituting the shipments was traced and established to be the sole and exclusive property of the State Bank and the Union of Soviet Socialist Republics and that recovery cannot be had. The case was tried under stipulation before a judge without a jury, and he directed a judgment for the appellees, holding (1) that the Russian State Bank in Petrograd had title to the gold ingots so deposited with it in 1915 and 1916; (2) that the gold ingots were not proved to have been commingled with other gold seized by the Bolsheviki; and (3) that the gold received by the appellees now sought to be replevined did not come out of the commingled mass.

■ The general finding by the judge below, a jury having been waived, has the same effect as a finding by a jury and is conclusive; it may not be disturbed if there is evidence to support the finding. Vicksburg, S. & P. R. Co. v. Anderson-Tully Co., 256 U. S. 408, 41 S. Ct. 524, 65 L. Ed. 1020; Fleischmann Const. Co. v. United States, 270 U. S. 349, 46 S. Ct. 284, 70 L. Ed. 624; Compania Transcontinental de Petroleo, S. A., v. Mexican Gulf Oil Co., 292 F. 846 (C. C. A. 2); Delaware, L. & W. R. Co. v. Kutter (C. C. A.) 147 F. 51. Where a general finding has been made, questions of fact are conclusively presumed to have been resolved in favor of the successful party below. Hyman-Michaels Co. v. Fox, 298 F. 440 (C. C. A. 2). We may not examine the weight of evidence. Thompson-Starrett Co. v. La Belle Iron Works, 17 F.(2d) 536 (C. C. A. 2); White v. United States, 48 F.(2d) 178 (C. C. A. 10). The suit being one in replevin, a possessory suit, is an action to recover the identical goods. It is essentially an action to recover the specific personal property wrongfully detained. Wells on Replevin (2d Ed.) § 33; Cobbey on Replevin (2d Ed.) §§ 12, 23. In order to successfully maintain an action in replevin, the rule requires that the plaintiff establish ownership or right to possession of the identical property sought to be recovered. But there is an exception in the case where the property has been wrongfully commingled with other property of a defendant, of the same nature and description, in such a way that the whole constitutes one mass, no particular parts of which can be distinguished. In such case the plaintiff may bring an action in replevin to recover his proportionate share of the commingled mass. This principle of confusion of goods, upon which the appellant relies in attempting to establish that the bars of refined gold received by the appellees are in law its bars, required proof (a) that the ingots of gold deposited with the Petrograd Branch of the Imperial State Bank were not capable of identification; (b) that the same ingots of gold were actually commingled in a common mass; and (c) that the bars of refined gold sought to be replevined came from that common indistinguishable mass.

■ The trial judge found and held that the title to the gold purchased and deposited with the Imperial State Bank at Petrograd was so deposited for the appellant's account with that bank, creating the relation of creditor and debtor, not that of bailor and bailee. He reached this conclusion largely upon the testimony of one witness who testified construing the deposit receipt. We need not consider the correctness of that determination, for we are of opinion that the appellant has failed to prove the commingling of its gold in a common mass with other Russian gold from which the gold ingots received by the appellees came. Moreover, that it has failed to prove the law of Russia to be similar to the law of this country as to the confusion of goods. Ownership of property or rights in and to the gold could be had only as a result of the fiat or ukase of the sovereign where the property is located. The sovereign having control over it is obviously the sovereign who, generally speaking, has jurisdiction over the rights in the property. So far as tangible property is concerned, questions relating to the creation of rights in the thing, the transfer and extension of rights, are determined by the law of the place where the thing is at the time. Beale on Conflict of Laws, 1916, part I, § 153. Where ownership is claimed to result from a contract entered into in one country relating to personal property situated in another, the law of the latter governs and must be proved as to the effect of the contract upon the title to the property. Direction Der Disconto-Gesellschaft v. U. S. Steel Corp., 267 U. S. 22, 45 S. Ct. 207, 69 L. Ed. 495; New York Trust Co. v. Island Oil & Transport Co., 33 F.(2d) 104 (C. C. A. 2); In re Circle Trading Corp., 26 F.(2d) 193 (C. C. A. 2). So here, where the appellant seeks to enforce a cause of action in replevin based upon the ownership and the right to possession of property claimed by it to have been acquired in Russia, it was necessary to plead and prove the Russian law whereby the appellant obtained that ownership and the right to possession of the gold which it now seeks to recover. Riley v. Pierce Oil Corp., 245 N. Y. 152, 156 N. E.

647. The law of Russia not having been established, a cause of action dependent upon it in so far as the law of confusion of goods is concerned cannot be maintained. Cuba R. Co. v. Crosby, 222 U. S. 473, 32 S. Ct. 132, 56 L. Ed. 274, 38 L. R. A. (N. S.) 40; Pritchard v. Norton, 106 U. S. 124, 1 S. Ct 102, 27 L. Ed. 104; Crashley v. Press Pub. Co., 179 N. Y. 27, 71 N. E. 258, 1 Ann. Cas. 196. It is a matter of common knowledge that the civil law obtained in Russia; the law of Imperial Russia was entirely foreign to our system and based upon the Roman Law. Wigmore, Panorama of World's Legal Systems, vol. 2, pp. 965–997; Sherman on Roman Law in the Modern World, vol. 1, § 199; Carmen v. Higginson, 245 Mass. 511, 140 N. E. 246.

However, it was not proved to the satisfaction of the court below, who solved the question of fact, that the gold contained in the shipments was part of the gold said by the appellant to have been deposited in the Petrograd Branch of the Imperial State Bank. The claim of the appellant, as to the ownership of the gold contained in the shipments received by the appellees, is based upon the fact that the gold deposited in the branch of the State Bank was commingled with other gold and subsequently lost its identity; that the gold contained in these shipments was taken in Russia from the commingled mass and shipped to the appellees. But the law of Russia respecting the legal effect has not been established and the appellant depends on the common-law authorities of this country in advancing the confusion of the gold as its theory of recovery. However, the court below found the fact to be that there was no commingling of the gold and we think there was evidence to support that conclusion. We may not now reverse the findings of fact.

The letter of March 27, 1916, from the Petrograd Branch of the Imperial State Bank to the appellant, disclosed a schedule of gold ingots received "sous votre dossier" from the Russo-Asiatic Bank and the International Bank of Commerce at Petrograd during 1915. The witness De Sahmen, Director of the Chancellery of Credit of the Russian Imperial Government in 1916 and 1917, said that the gold purchased for the Bank of France was still in the vaults of the State Bank at the time of the Bolshevist coup d'état. He later testified, however, that the "sources of my knowledge were reports made on many occasions by competent officials. I cannot remember the dates of such reports. * * *

The actual deposit of the ingots would very likely not have been reported to me. * * * I did not visit the vaults and had nothing to do personally with analyzing, assaying, weighing." Bernatsky, who was Under-Secretary of State for Finance from July to September, 1917, and Minister of Finance in the Kerensky Provisional Government from September 20 to November 7, 1917, testified that the Governor of the State Bank reported to him weekly all movements of gold, but never informed him of any movement of gold belonging to the Bank of France. He never visited the vaults in the bank during his term of office. The manager of the note department of the Imperial State Bank knew nothing of any deposit of gold, at the time, for the Bank of France and did not know what gold was stored in the Petrograd Branch of the State Bank of Russia at the time of seizure by the forces of the Soviet Régime. The proof as to what became of appellant's gold by way of removal from the State Bank is not satisfactory. Documentary evidence offered by the appellant indicates that the ingots of gold on deposit from 1915 until November, 1917, with the branch bank was of high silver content, but, as appellant concedes, the difference between the gross and fine weights would indicate that it was alloy gold. The average fineness of the gold deposited by the Russo-Asiatic Bank was .8772 and that deposited by the International Bank of Commerce was .8689. The assay of the bars of gold, which in 1925–26 and 1926–27 were refined at the Moscow and Sverdlovsk Refineries and received by the respective appellees was 999.8 and 999.9. It is not disputed that the appellant's ingots came from a smelter while that received by the appellees came from a refinery. Therefore, for identification purposes, it was essential to show how ingots of alloyed gold of low assay became bars of refined gold of high assay. Silsbury v. McCoon, 3 N. Y. 379, 53 Am. Dec. 307; Arnold, "Accession of Personal Property," 22 Columbia Law Review, 103.

Confusion of goods takes place only when it appears that the property of each of the parties cannot be distinguished, and, where it is possible to distinguish the goods by their appearance or by their marks, there is no confusion. Claflin v. Beaver (C. C.) 55 F. 576; Treat v. Barber, 7 Conn. 274; Moore v. Bowman, 47 N. H. 494; Smith v. Sanborn, 6 Gray (72 Mass.) 134. It is not contended that appellant's ingots of gold bore marks of any description, or, if bearing marks, that they were removed. But the ap-

pellant argues that, when the forces of the Russian Soviet Régime in November, 1917, wrongfully seized the gold in the vaults of the Petrograd Branch of the State Bank of Russia and unlawfully confiscated and appropriated the same, they commingled appellant's gold ingots with other gold seized, and that the subsequent refinement of them by the Soviets does not defeat its right of recovery. But the difficulty with appellant's case is the failure to establish that the ingots of alloy gold were taken from the bank and commingled with bars of other gold and subsequently received as refined gold by appellees. The proof offered below was unsatisfactory to the trial judge, and his finding is not without support. The court refused to indulge in inferences sought to be drawn from the circumstances, and the general finding in favor of the appellees has determined the inferences to be drawn against the claims of the appellant. It is said that the building of the Petrograd Branch of the Imperial State Bank also contained the head office of the bank, and each had separate vaults for the protection of their respective gold. It is argued that because the headquarters of the Soviet Régime were removed from Petrograd to Moscow in March, 1918, the inference may be drawn that not only the gold of the head office of the Imperial State Bank but also the gold of the Petrograd Branch was removed by the Soviets from that building to Moscow. One witness testified that, at the time of the removal of the headquarters of the Soviet government to Moscow from Petrograd in March, 1918, he saw an accumulation of trucks around the Imperial State Bank at Petrograd, between February 10 and 20, 1918, but did not know where the trucks went or what they transferred. There is testimony that Red guards were in the Petrograd building of the Imperial State Bank, that the Soviets seized the Moscow office in November, 1917, and that former employees of the Petrograd Branch, who were accustomed during previous years whenever gold was being transferred, to take charge of its transportation, were sent to Moscow. There is also testimony that trains were furnished to transfer the gold which was taken from banks and private parties, but a review of the testimony does not establish knowledge as to the deposits of the appellant's gold or its transportation to Moscow. Whatever inference might be drawn from the fact that gold was seized by the Soviets, it is insufficient to justify a conclusion of commingling of the appellant's gold with that received and refined **at** Moscow. Indeed, the appellant does not

urge that the refined gold produced at the Sverdlovsk Refinery was part of its gold which went into the bars received by the appellees. Counsel for the appellant, in moving for a directed verdict, asked that it might have judgment only for the bars of refined gold produced at the Moscow Refinery. The burden of proof was upon the appellant to establish the commingling of the gold. The result of the appellees' attempt to trace the gold which it received we need not consider, in view of the finding below that the burden had not been sustained by appellant.

Appellant concedes that a wrongful commingler can escape forfeiture of the whole mass by identifying his own property. But it is urged that appellees cannot eliminate the bars of refined gold from consideration while tracing the origin of the gold contained in those bars until such time as the appellant is made whole. The commingler can recover his property but not that definitely identified as belonging to another. People's Bank v. Mulholland, 228 Mass. 152, 117 N. E. 46; Ames v. Mississippi Boom Co., 8 Minn. 467 (Gil. 417); Wood v. Fales, 24 Pa. 246, 64 Am. Dec. 655. The markings on the bars of refined gold contained in the shipments to the appellees were placed thereon at the time of their production at the Moscow Refinery. The origin of the gold from which such bars were produced was traced to its sources. This the court below agreed with in holding against the claim of commingling.

But the appellant relies upon decrees, Exhibits B and D, attached to the respective answers. These were two Soviet decrees. Exhibit B, "a decree regarding the revision of the steel vaults of the banks," reads: "All the money that is being kept in the steel vaults of the banks must be deposited to the account of the client in the State Bank. Remarks: Gold coin and gold in bars are confiscated and transferred to the State gold fund."

It is apparent that this decree dealt with the contents of safe deposit vaults. They were referred to under the heading of "remarks," and the reference to the state gold fund was an auditing or accounting designation. It left the possible inference, which has been decided against the appellant's contention by the finding of the trial judge, that pursuant to the decree the gold fund constituted a physical mass which was taken from the steel vaults or safe deposit boxes of the banks. The other decree, Exhibit D, provides: "By a decree of the Central Executive Committee and the Council of the Peo-

ple's Commissars of the U. S. S. R. of January 9, 1925, the capital of the State Bank was increased to 10,000,000 chervontzi (Compiled Laws and Decrees, 1925. No. 2, Art. 19)."

This decree is dated January 9, 1925, seven years after appellant's gold was claimed to have been seized at Petrograd. It authorized the State Bank to employ fifteen million rubles from the reserve appearing in the balance sheet of the bank on October 1, 1924, and to grant to the State Bank from the gold fund of the Union of S. S. R. thirty-five million rubles by transferring this amount from the account of time deposits of precious metals deposited by the People's Commissariat for Finance of the Union of S. S. R. with the State Bank. It was apparently a transfer made on the books of the bank and not a physical transfer of the gold. It is an authorization for a transfer on the books of the State Bank from one account to another of a time deposit which existed in 1925, but is otherwise untraced and unexplained by the evidence. We think, as the court below found, that both decrees prove nothing with respect to the disposition of appellant's gold.

The decrees were pleaded by the appellees as affirmative defenses in the nature of a confession and avoidance. The facts admitted in such special pleas or affirmative defenses are admitted only for the issues arising out of the pleading of such affirmative defenses and may not be used by the appellant to prove the general issue. Glenn v. Sumner, 132 U. S. 152, 10 S. Ct. 41, 33 L. Ed. 301; Whitaker v. Freeman, Fed. Cas. No. 17,527a; De Waltoff v. Third Ave. R. Co., 75 App. Div. 351, 78 N. Y. S. 132; Shrady v. Shrady, 42 App. Div. 9, 58 N. Y. S. 546. But the decrees are not evidence that the gold at any time was treated as one fund or became a confused mass later. Confusion of goods must be proved as a fact. Stone v. Marshall Oil Co., 208 Pa. 85, 57 A. 183, 65 L. R. A. 218, 101 Am. St. Rep. 904.

A review of the evidence satisfies us that the appellant has proved only that it had gold in Russia in 1917, and claims that because all the gold in Russia came under the control of the Soviets, its gold is amongst it, and, in some way unexplained, found its way to the gold bars received by the appellees. The absence of proof of actual and physical commingling of appellant's gold with the mass of gold received at the Moscow Refinery is fatal to appellant's case.

The appellant refers to authorities which we think may be distinguished. The cases of Stevens v. Wilson Creek Union Grain & Trading Co., 145 Wash. 624, 261 P. 399, Sexton v. Graham, 53 Iowa, 181, 4 N. W. 1090, and Trejbal v. Packard Farmers' Warehouse Co., 124 Wash. 638, 215 P. 26, involved deposits of grain in warehouses under express contracts or statutes governing the rights of the parties to the deposit. These contracts or statutes materially altered the rights of the parties, giving the bailor the right to demand any grain which may subsequently be placed in the warehouse whether or not in the particular bin or floor in which his grain was originally deposited. In Jennings-Heywood Oil Syndicate v. Houssiere-Latreille Oil Co., 127 La. 971, 54 So. 318, Ann. Cas. 1913E, 679, oil was stored in widely separated tanks which were owned by the same concern, and it was held that they may be treated as a common mass if the contract so stipulates. In Lohrenz v. Nelson, 123 Minn. 525, 143 N. W. 268, a replevin action was instituted to recover cordwood alleged to have been confused by the defendant with his own wood. The theory of confusion of the wood was rejected.

War conditions and the difficulty in obtaining proof was a hindrance and a handicap to the appellant, but that does not excuse failure of proof. Yesbera v. Hardesty Mfg. Co., 166 F. 120 (C. C. A. 6), certiorari denied 214 U. S. 513, 29 S. Ct. 696, 53 L. Ed. 1063; Life & Fire Ins. Co. v. Mechanic Fire Ins. Co., 7 Wend. (N. Y.) 31; Webb v. Bowden, 124 Ark. 244, 187 S. W. 461, Ann. Cas. 1918A, 60; Patch Mfg. Co. v. Protection Lodge, 77 Vt. 294, 60 A. 74, 107 Am. St. Rep. 765. It may be that the appellees might have called some witnesses who knew more about the situation in Russia and the history of the appellant's gold after its deposit with the State Bank, but that is not a matter of moment nor can it help the appellant by permitting inferences to be drawn against the appellees which may be weighed in favor of the appellant. Owens Bottle Machine Co. v. Kanawha Banking & Trust Co., 259 F. 838 (C. C. A. 4); Perlman v. Shanck, 192 App. Div. 179, 182 N. Y. S. 767; Shotwell v. Dixon, 163 N. Y. 43, 57 N. E. 178. The court below was not permitted legally to infer or presume facts not proved. United States v. Ross, 92 U. S. 281, 23 L. Ed. 707. As the trial court found, the evidence was insufficient to justify the finding that, at the time of the Soviet coup d'état in November, 1917, ingots of alloy gold were seized at the Petrograd Branch of the Imperial State Bank, subsequently taken to the Moscow Refinery, there commingled in a common mass, and finally

shipped as bars of refined gold to the appellees. We may not reverse that conclusion. Hathaway v. First Nat. Bank, 134 U. S. 494, 10 S. Ct. 608, 33 L. Ed. 1004; White v. United States, 48 F.(2d) 178 (C. C. A. 10); Thompson-Starrett Co. v. La Belle Iron Works, 17 F.(2d) 536 (C. C. A. 2); Camden Woolen Co. v. Eastern S. S. Lines, 12 F. (2d) 917 (C. C. A. 1).

Finding, as we do, a failure to prove commingling or confusion of the goods, it becomes unnecessary to consider whether or not title passed to the State Bank when the gold was deposited at the Petrograd Branch. In view of the finding below, which we think is supported by the evidence, the judgment is affirmed.

Judgment affirmed.