No. 19876.   Department Two.   October 8, 1926.]

YAKIMA SASH & BOX COMPANY, *Respondent*, v. C. M.
KOPP et al., *Appellants*.[1]

[1] JUDGMENT (196)—MERGER AND BAR—PARTIES CONCLUDED—JOINT
LIABILITY—PARTNERS. An individual judgment against one part-
ner is authorized by Rem. Comp. Stat., § 236, providing that, in
an action against two or more defendants jointly indebted on a
contract, the plaintiff may proceed against the defendant served
and take judgment against all jointly indebted so far as it may
be enforced against the joint property of all and the separate
property of the defendant served.

[2] SALES (89, 92)—TRANSFER OF TITLE—DELIVERY—PAYMENT OF
PRICE—ARTICLE TO BE MANUFACTURED. Where a contract for box
shooks required the buyer to take delivery at the mill as man-
ufactured, in lots of not less than four thousand, which he
failed to do upon demand, requesting the manufacturer to store
them for him, the title to shooks, paid for at the time of a fire,
passed to the buyer, although he had not accepted actual de-
livery.

[3] SAME (133)—ACTION FOR PRICE—QUALITY OF GOODS—EVIDENCE—
SUFFICIENCY. A finding as to the quality of box shooks manu-
factured for plaintiff is sustained by evidence that users did not
complain of their condition, and that the manufacturer stood
ready to accept back and adjust any that were below grade.

Appeal from a judgment of the superior court for
Yakima county, Hawkins, J., entered September 12,
1925, upon findings in favor of the plaintiff, in an
action on contract, tried to the court. Modified.

*McAulay & Freece*, for appellants.
*Richards, Gilbert & Conklin*, for respondent.

MITCHELL, J.—Under a written contract between the
parties, the Yakima Sash & Box Company, a corpora-
tion, sold and delivered to the C. M. Kopp Company,
a copartnership, a quantity of fruit boxes and box

[1]Reported in 249 Pac. 786.

shook manufactured and to be manufactured in the year 1924. The corporation brought suit against the copartnership and C. M. Kopp, a member of it, to recover judgment for the balance alleged to be due. The defendants have appealed from a judgment on findings of fact and conclusions of law in favor of the plaintiff.

[1] On behalf of C. M. Kopp, it is claimed there should have been no individual judgment against him and that his demurrer to the complaint against him individually should have been sustained. He is a member of the copartnership. He was served and made a separate appearance in the action. Subdivision 1 of our joint debtor act, Rem. Comp. Stat., § 236 [P. C. § 8449], provides:

"1. If the action is against the defendants jointly indebted upon a contract, he may proceed against the defendants served unless the court otherwise directs; and if he recovers judgment it may be entered against all the defendants thus jointly indebted so far only as it may be enforced against the joint property of all and the separate property of the defendants served."

This action is upon a contract. C. M. Kopp as one of the partners is jointly liable. The joint property of the partnership and the separate property of C. M. Kopp may be subjected to the payment of any judgment recovered. The statute says so. *Warren v. Rickles,* 129 Wash. 443, 225 Pac. 422; *Livingstone v. Lovgren,* 27 Wash. 102, 67 Pac. 599.

[2] The trial court found that a given quantity of boxes and shook had been delivered, which included a quantity destroyed by fire when respondent's plant or mill was burned. It was also found that the shook actually delivered out of the factory to the users was up to the standard of quality and manufacture required by the contract. Exceptions were taken to these findings, so that, as appellants say, the two main ques-

tions in the case are (1) had title to the shook that was burned passed to appellants so that they must stand the loss; and (2) were the shook actually delivered out of the factory to the users up to the standard of quality required by the contract.

Upon the first question, the authorities discussing such subject are numerous and apparently discordant, elucidating or confusing by a variety of distinctions and refinements. But, as counsel for appellants say, on this the cases agree that "whether or not and when" title passes is dependent upon the intention of the contracting parties. So-called tests do not control, if without or beyond them the intention of the contracting parties can be ascertained; or, as said in *Pacific Lounge & Mattress Co. v. Rudebeck,* 15 Wash. 336, 46 Pac. 392:

"While it is true that in many instances the test of an actual conveyance is the doing of everything which is to be done, yet under the modern authorities, at least, the doctrine of intention prevails, and where the intention of the contracting parties can be ascertained without doubt, no test is necessary and the property in the thing vests whether something else is to be done or not."

The contract between the copartnership as first party and the corporation as the second party provides:

"Said box shook shall all be manufactured from good dry pine stock, and shall be delivered to first parties at the plant of second party in Yakima, Washington, excepting that second party will deliver to Yakima Valley points carrying not more than a 14 cent freight rate 125,000 of said apple and pear boxes. Second party will either load the shook representing the above sale of material (other than said 125,000 boxes) upon a truck furnished by first parties or on board cars ordered and furnished by first parties and spotted at the factory of second party in Yakima, Washigton. . . . Delivery of said boxes shall begin not

earlier than April 15, 1924, and shall proceed as rapidly as same are manufactured by second party in the regular course of its mill and box factory business. . . . It is agreed that first parties will take delivery of this box shook as rapidly as same are produced by second party at its factory at Yakima, Washington, but at their option in lots of not less than 4000.''

The contract also provided that the price to be paid by the appellants on apple and pear boxes was the wholesale price at Yakima, less 1½ cent per box; the price to be paid for apple and pear sides, ends and cleats was the wholesale price at Yakima of apple and pear boxes, less 3½ cents per box, less 1½ cent per box; and the price for peach boxes was to be the wholesale price at Yakima, less ¾ cent per box. The manufacture and delivery of the articles was to commence on April 15.

Outside of the making of the contract and its terms, there is substantial conflict in many respects in the testimony on behalf of the respective parties. Prior to the fire, no goods were shipped out to Yakima valley points under the 14 cent freight rate provision of the contract. Testimony on behalf of the respondent, introduced without objection, was to the effect that the provision requiring the respondent to load trucks or cars at the mill was to cover the expense of that work. The mill had a limited capacity for storage and at the time of making the contract it was explained and understood that appellant must take delivery as did the purchaser of the output the year before, that is, at the plant as manufactured, so that it was provided by the contract that delivery would be taken of boxes and shook as rapidly as the same were produced at the factory. Shortly after commencing to cut the material and manufacture boxes under the contract, the material commenced to accumulate and require rehandling to keep it out of the way, during which time the respond-

ent urged the appellants to take it away. But appellants made excuses that their warehouse had no available storage room, that their customers were not yet ready to take from them such articles for use in their orchards, and requested the respondent to store the goods at its own premises. On May 5, pay day by the terms of the contract for boxes and shook manufactured in April, a representative of the appellants went to the mill, received a list of the April output, and paid for it by a trade acceptance in the sum of $2,500. The appellants had theretofore arranged payments in the sum of $10,000 to be applied on shook to be cut during August and September. On May 5 appellants again stated they had nowhere to store the goods, to let them stay where they were and that they would look after having them insured. Again, before the fire on May 13, it was insisted without success that the shook still accumulating should be moved out of the way by appellants.

Counsel call attention to the provision "but at their option in lots of not less than 4000" found in connection with the agreement to take box shook as rapidly as the factory cut it, and argue therefrom that it was not intended, at least to the extent of that much material and indeed not at all, to take delivery of the output until it had been physically put upon trucks or cars. On the contrary, that language, considered in connection with explanatory testimony, points very clearly to the opposite view. The testimony shows that it was understood in making the contract that the consideration for selling the goods at less than the wholesale price from month to month as provided in the contract was that delivery was to be taken from the saw, or as it was produced, to save the respondent the expense of rehandling the goods. It was in this connection and with this understanding that the appellants had incor-

porated in the contract a provision that they could not be compelled to take in that way a lot of less than four thousand shook, estimated to be a single truck load. That is, whenever four thousand shook or more were cut and on hand delivery to the purchaser was complete. That provision can have no bearing on this case other than to show that was the intention of the parties, because on the pay day, May 5, and at all times thereafter until the fire, the output of the mill on hand was in excess of four thousand shook.

As stated in an authority cited in *Pacific Lounge & Mattress Co. v. Rudebeck, supra:*

" 'Thus, although it is a presumption of law that if something remains to be done for the purpose of testing the property, or of fixing the amount to be paid by weighing, measuring, or the like, or of putting the property into condition for final delivery, title does not pass until such act is done, yet this presumption may be overcome and title will pass if such appears by the contract to have been the intention of the parties.' "

The finding that there was delivery of the shook to the defendants prior to the fire is sustained, in our opinion, by a preponderance of the evidence.

[3] The second main question, relating to the quality of the shook taken from the mill by the appellants for their customers, involves only a question of fact upon which there was a conflict in the evidence. After the fire, the mill was rebuilt. The shook taken from the mill were cut, part before and part after the fire. The contract provided that the respondent should accept back or adjust any off-grade or badly manufactured goods. There were some users of the goods who testified they were not satisfied, but only one of them ever made any definite claim to the respondent directly or indirectly, and in that case good shook or boxes were furnished to the party complaining. The respondent

held itself out as ready to do the same thing in all cases according to the terms of the contract. We do not find sufficient in the record to overcome the court's finding in favor of the respondent in this respect. On the contrary, we think the finding is supported by a preponderance of the evidence.

One assignment of error must be favored. One item charged to the appellants is 20,000 peach boxes at 5½ cents per box. Manifestly, from the record, this refers to material supposed to have been lost in the fire. The testimony shows that the inventory made of the output of the plant on May 1 included 20,000 peach boxes, as material for that kind of boxes was designated. The testimony shows that, from the date of that inventory to the date of the fire, no peach box material was manufactured. Or, more accurately speaking, of the small quantity cut during that time counsel for the respondent said:

"In order that that small quantity of peach boxes will not confuse things, it may be understood we are not basing any claim upon that item."

Now, the undisputed testimony shows that, in the month of May and prior to the date of the fire, one of appellants' customers, on an order for that purpose, received and took away from the mill material consisting of ends, sides and tops and bottoms for peach boxes, of uneven numbers that could not be described in the term of full boxes, but equal in value, as we understand the proof, to 4,245 peach boxes. This number at 5½ cents per box, $233.47, must be deducted from the amount reckoned as having been burned. We find no other error in the case.

The cause is remanded with directions to the superior court to modify the judgment as herein indicated.

TOLMAN, C. J., ASKREN, PARKER, and MACKINTOSH, JJ., concur.