[No. 26908. Department One. April 18, 1938.]

WILSON MOTOR COMPANY, *Respondent*, v. LAMPING MOTORS, INC., *et al., Appellants.*[1]

*Edward M. Hay* and *Laurance S. Carlson,* for appellants.

*Fred C. Brown,* for respondent.

MAIN, J.—This action was brought to recover for the conversion of an automobile. The defendant Walter D. Fullaway answered by general denial. The defendant Lamping Motors, Inc., answered by general denial, and also by cross-complaint, in which it sought an affirma-

[1]Reported in 78 P. (2d) 559.

tive judgment against the plaintiff. At the conclusion of the trial, an order was entered, in which the answers of the defendants were amended in order to plead an offset. The trial court found that the title to the automobile in question had passed to the plaintiff; that the same was converted by the defendants, and that the value thereof was $340. From the judgment entered for this sum against both defendants, they appeal.

The facts which will present the questions for determination upon this appeal may be summarized as follows: The respondent, Wilson Motor Company, is a corporation organized under the laws of this state, with its principal place of business in Seattle, where it is engaged in selling automobiles. The Lamping Motors, Inc., one of the appellants, is a corporation organized under the laws of this state, with its principal place of business in Seattle, where it is engaged in the selling of automobiles.

The other appellant, Walter D. Fullaway, was the owner of a 1933 Ford coupe. June 27, 1936, he contracted to purchase a new Ford car from the Wilson Motor Company and turn in his then car on the purchase price for the amount of four hundred dollars. Fullaway specified that the color of the new car should be black, and that it should have steel pistons. The contract, which was signed on this day, does not fix any time for delivery.

After the contract was executed, the Wilson Motor Company tried to obtain a car the color of which was black and which had steel pistons, from the agencies in Seattle, but none of them had such a car. A representative of the company also made a trip to Tacoma in an effort to get what was specified. It not being possible to get the car locally, it was necessary that it be gotten from the factory, which would take some time. Not getting the car within a week or so, Fullaway wanted

to cancel his contract by the payment of ten dollars, but the Wilson Motor Company refused to accept anything less than twenty-five dollars. The contract was not cancelled.

July 9, 1936, Fullaway purchased a car from the Lamping Motors, Inc., and turned in the Ford as a part of the purchase price for the sum of $450.

At the time that Fullaway signed the contract to purchase the car from the Wilson Motor Company, and as a part of the same transaction, he gave that company a blank bill of sale to his then car, signed by himself. At the same time, he endorsed his certificate of title to that company. Subsequently, the Lamping Motors, Inc., desired this certificate of title in order that the person to whom it had sold the Ford might obtain his 1937 license, and some talk took place between a representative of the Lamping Motors, Inc., and the Wilson Motor Company. But the certificate was not delivered as requested. Subsequently, the present action was begun for the purpose, as above stated, of recovering the value of the Ford car, because it was claimed by the respondent that the defendants had converted it to their own use.

Whether there had been a conversion in this case depends upon whether title had passed to the Wilson Motor Company at the time the "buyer's order" contract above mentioned, the bill of sale, and the certificate of title were signed and delivered. When this transaction took place, it was understood that Fullaway would retain possession of the car and use it until a new car came. There is practically no controversy between the parties as to this.

The question as to whether title passed depends upon the intention of the parties. *Yakima Sash & Box Co. v. Kopp*, 140 Wash. 420, 249 Pac. 786. Taking into consideration the facts and circumstances surrounding

the transaction and the fact of signing the three documents above mentioned, it seems only reasonable to conclude that the parties intended that the title to the automobile that Fullaway was turning in as a part of the purchase price should pass on the date the documents mentioned were signed and delivered. After that, his use of the car was permissive.

In reaching this conclusion, it is not necessary to go into detail and discuss the legal effect of the transfer of the certificate of title, the delivery of a bill of sale signed in blank, or the "buyer's order," because such discussion is not necessary to the determination of the intention of the parties.

The next question is the measure of damages. The general rule is that the value at the time of the conversion fixes the amount of the recovery. *Baumgardner v. Kerr-Gifford & Co.*, 144 Wash. 206, 257 Pac. 390; *Fischnaller v. Sussman*, 167 Wash. 367, 9 P. (2d) 378. That rule, however, is not applicable where title has passed to the purchaser who has paid no part of the purchase price and the seller, before delivery, converts the property to his own use.

In 2 Williston on Sales (2d ed.), § 596, under the heading "Damages for failure to deliver goods when property has passed," it is said:

"If the price has not been paid, however, the seller's breach of duty in failing to deliver the goods involves the result that the buyer is excused from his obligation to pay the price. Accordingly the contract price of the goods must be deducted from the plaintiff's recovery, and thus the measure of damages is in effect the same as if the property in the goods had not passed."

The measure of damages, when title to the property had not passed, is the difference between the contract price and the market or current price of the goods at

the time or times when they ought to have been delivered.

In 2 Williston on Sales (2d ed.), § 597, under the heading "Buyer's right of action where property has not passed," it is said:

"Where there is an available market for the goods in question, the measure of damages, in the absence of special circumstances showing proximate damages of a greater amount, is the difference between the contract price and the market or current price of the goods at the time or times when they ought to have been delivered, or, if no time was fixed, then at the time of the refusal to deliver."

Applying the rule stated to the facts in the present case, it appears that the contract price at which the Ford was taken in by the Wilson Motor Company was four hundred dollars. The trial court fixed the value of the automobile at $340. The contract price which the Wilson Motor Company was to pay being greater than the reasonable or market value of the car, that company would only be entitled to nominal damages.

The Lamping Motors, Inc., being in privity with Fullaway, stands in the same position as he did. *Amey v. Augusta Lumber Co.*, 128 Me. 472, 148 Atl. 687; *First Nat. Bank v. Broder*, 107 Conn. 574, 141 Atl. 861.

What the rule of damages would be had the automobile been converted by an entire stranger to the title, it is not necessary here to determine.

It must be remembered that we are not here dealing with an action to recover damages for breach of contract, but dealing purely with an action for the conversion of personal property.

The judgment will be reversed, and the cause remanded with directions to the superior court to enter

a judgment in favor of the respondent for nominal damages.

STEINERT, C. J., HOLCOMB, GERAGHTY, and SIMPSON, JJ., concur.