[No. 7023.  Decided December 10, 1907.]

AUGUST H. RICHTER, *Respondent*, v. JOHN BUCHANAN *et al.*, *Appellants.*[1]

CHATTEL MORTGAGES—NATURE—TITLE—POSSESSION. Possession by the mortgagee of chattels, under a stipulation therefor in the mortgage, does not change the rule in this state that the legal title remains in the mortgagor.

SAME—POWER OF SALE—CONSTRUCTION. A power of sale in a chattel mortgage, authorizing the mortgagee to sell at retail, does not authorize a sale in bulk of stock remaining after a partial sale at retail.

SAME—UNAUTHORIZED SALE—CONVERSION—DAMAGES. A mortgagee in possession of chattels, who was empowered by the mortgage to sell the goods at retail, is guilty of a conversion in selling in bulk; and is liable in damages to the mortgagor for the value of the property over and above the mortgage debt.

Appeal from a judgment of the superior court for Clarke county, McCredie, J., entered March 15, 1907, upon findings in favor of the plaintiff, after a trial on the merits before the court without a jury, in an action for conversion. Affirmed.

*A. L. Miller*, for appellants.

*Rands & Connor* and *McMaster & Back*, for respondent.

DUNBAR, J.—This is an action for damages for conversion of property. The court found that, at the time the hereinafter described contract was entered into, the plaintiff was the owner in possession of the stock of goods described; that, for the purpose of securing to be paid to said defendants the sum of $2,628.37, then owing by plaintiff to defendants, plaintiff made, executed, and delivered to defendants a deed to the real estate described, and to further secure the payment of said sum, executed a chattel mortgage of the personal property, which was the stock of goods; that it was agreed in

[1]Reported in 92 Pac. 782.

said chattel mortgage that defendants should have possession of such stock of goods and should proceed to sell the same at retail until the said sum of $2,628.37 should be realized, with interest thereon, together with such sums as should be expended by defendants in making additions to the stock, and the sum of $50 per month for defendants' services; that thereupon defendants took possession of the personal property, and for six weeks continued to sell such goods at retail at an average profit of fifteen per cent, and from such sale realized the sum of $2,169.40; that during such six weeks defendants added to such stock to the value of $1,662.58, freight $42.65, making the value of the stock so added $1,705.23, and that they were entitled under the agreement of chattel mortgage to $75 as compensation for services in selling said goods; that upon the 15th day of April, 1904, the defendants, without the knowledge or consent of the plaintiff and without any proceedings to foreclose said mortgage, sold the remainder of the goods in bulk, and not at retail, for the sum of $1,831; that at the time of such sale in bulk the value of the property remaining in the hands of defendants was the sum of $3,399.34; that upon the 15th day of April there was due defendants from plaintiff the sum of $2,628.37, plus paid for new goods and freight on same $1,705.23, plus interest $32, plus allowance of $50 per month for one and one-half months, $75; whole amount $4,440.60, making a total due said defendants, after deducting the amount realized from sale of merchandise at retail, of $2,271.20. From such findings it was concluded that the plaintiff was entitled to judgment against the defendants for the sum of $1,128.14, and to a decree finding the deed aforesaid to be a mortgage and to be fully satisfied, and judgment for costs and disbursements to the plaintiff. The findings of fact substantially followed the allegations of the complaint.

So far as the pleadings are concerned, there is no question but that there was a flagrant violation of the contract by the

defendants. Paragraph 6 of the complaint alleges that it was agreed and stipulated in the chattel mortgage that the defendants should sell the goods at retail after the manner of good, careful and thrifty merchants until the amount of the indebtedness should be satisfied, and this paragraph is especially admitted in paragraph 3 of the answer. Paragraph 10 of the complaint alleges that on or about April 15, 1904, defendants, contrary to the terms of the agreement and without the knowledge or consent of plaintiff, and without proceeding in any court for the foreclosure of the mortgage, sold the remainder of the mortgaged property in bulk, to plaintiff's damage in the sum of $2,000, and while the answer in words denies paragraph 10, the separate answer virtually admits the truth of the allegation in paragraph 10 of the complaint, except the allegation of damages, but justifies the breach by alleging that the goods left were odds and ends difficult to sell at retail, and that the defendants believed the remaining stock could be sold to a better advantage by selling the same in bulk, and that acting upon said belief they sold the same in bulk, and it was upon this theory that the cause was tried.

Some days after the trial, upon application of the defendants, the case was reopened for the purpose of admitting in evidence the chattel mortgage aforesaid, when the defendants asked leave of the court to amend their answer to correspond with the testimony, claiming that they had been misled in regard to the provisions of the chattel mortgage. This motion was denied by the court, to which ruling the defendants excepted; but the action of the court in denying the motion is not assigned as error here.

The court evidently construed the mortgage as bearing out the allegations of the complaint and the admissions of the answer as to the requirements that the goods should be sold at retail, and an examination of that instrument shows that, while the stipulation in that regard is not in the words of the complaint, the whole tenor of the instrument is plain to the

effect that the goods were to be sold at retail. Any other con-
struction would be inconsistent with many of the provisions
therein expressed. That was evidently the understanding of
the parties to the transaction, and was the construction placed
upon it by the answer of the defendants.

But it is contended by the appellants that, in any event,
the judgment of the court is not correct, for the reason that
the action of the defendants did not constitute conversion,
and that therefore the plaintiff was only entitled to such dam-
ages as he could show that he was entitled to by reason of the
goods being sold in bulk instead of by retail, and many cases
are cited to sustain this contention, and this is the general
rule in jurisdictions where the legal title passes to the mort-
gagee. But in this state the legal title remains in the mort-
gagor and the mortgage is held to be but an incident of the
indebtedness, and the goods are only impressed with a lien for
the benefit of the mortgagee. This has been held so many
times and so uniformly by this court that reference to cases
is not necessary. In fact this proposition is conceded by
learned counsel for appellants, but he seeks to distinguish this
case from the ordinary chattel mortgage where the possession
generally remains in the mortgagor, and contends that the
other rule obtains where the possession is rightfully in the
mortgagee. We do not think that mere possession by stipu-
lation in the mortgage necessarily transfers the legal title. It
simply gives the mortgagee such additional rights as are stipu-
lated and no more. In this case it gave the right to posses-
sion and right to sell in a certain manner, and the answer of de-
fendants that they acted on the belief that they could sell the
goods in bulk to better advantage than they could at retail
is no defense whatever; for if our construction of the mort-
gage is correct, that is a question which was the subject of
the contract and had been determined by the contract.

The appellants cite *Bancroft-Whitney Co. v. Gowan*, 24
Wash. 66, 63 Pac. 1111, where it is held that where a chattel

mortgage gives a mortgagee the right in case of default in payment to take possession of the goods and retain them, such right of possession may be enforced by action of claim and delivery. But this case in no wise, it seems to us, sustains appellants' contention. The court, in the course of its discussion of that case, said:

"Neither did the plaintiff, as in the case of *McClellan v. Gaston, supra,* undertake to enforce its remedy outside of the law, but it has brought itself within the terms of the contract, and the contract is not susceptible of construction. Its terms are too definite, direct, and plain to be varied by oral testimony. It provides that the Bancroft-Whitney Company may take possession of said books and retain the same, or may sell them without taking possession of them. With this right plainly and unequivocally guaranteed to the company by the contract, it was warranted in bringing the action in the form in which it did bring it, for the purpose of obtaining possession of the property."

In that case it will be seen the mortgagees were strictly following the stipulations in the contract, and it was upon that ground that the court decided in their favor. But in this case, instead of the right to sell in bulk being unequivocally guaranteed to the mortgagees, the stipulation is exactly to the contrary, and they were proceeding in a manner which was prohibited by the contract. It is plain also that *Brockway v. Abbott,* 37 Wash. 263, 79 Pac. 924, fails to sustain appellants' contention; and while it is true that in that case we held that a mortgagee in possession for the purposes of security was not guilty of conversion by reason of delaying foreclosure after condition broken, while the right of foreclosure existed, and that the mortgagor could not recover the value of the property without redeeming from the mortgage debt, an examination of the case shows that the question under discussion, and passed upon by this court, was altogether different from the question at bar. There the appellant Abbott contended that the respondent's acts with reference to the mortgaged property amounted to a conversion of such prop-

erty, rendering her liable for its actual value; that they took the goods as mortgagee in possession, and that there was such an unreasonable delay in disposing of them that the law implied a conversion, and this court in passing upon that question said:

"The possession of the mortgaged property by a mortgagee in possession does not become wrongful immediately upon condition broken, nor during the time the right of foreclosure exists. If the mortgagee actually converts the property, or suffers his right to foreclose to lapse from some other cause, then he becomes liable to account to the mortgagor for the value of the property over and above the mortgage debt. But so long as the property remains intact, and the right of foreclosure exists, the possession of the mortgagee is rightful, and the only remedy the mortgagor has, against the mortgagee, is to redeem from the mortgage debt; he cannot recover the value of the property because of mere delay in foreclosure."

But in this case it is conceded that the property did not remain intact, but that it was actually sold and passed out of the possession of the mortgagees, and there was no opportunity for the mortgagor to redeem. The case as a whole sustains the respondent rather than the appellants and announces the rule that, if the mortgagee actually converts the property, he becomes liable to account to the mortgagor for the value of the property over and above the mortgage debt, and that was the judgment which was rendered in this case. We think it hardly worth while to cite extensive authority on this proposition. In short, the mortgagees were in possession of this property as agents of the mortgagor to dispose of the property in the manner provided in the agreement, and not having disposed of it in that manner nor in the manner provided by law under the rule announced in the case just above cited, they become liable to the mortgagor for the value of the property over and above the mortgage debt.

The judgment is affirmed.

MOUNT, ROOT, RUDKIN, and FULLERTON, JJ., concur.