[No. 20584.    Department Two.    June 27, 1927.]

J. A. BAUMGARDNER, *Appellant*, v. KERR-GIFFORD & COMPANY, INCORPORATED, *Respondent*.[1]

[1] PRINCIPAL AND AGENT (30, 34, 42)—RIGHTS AS TO THIRD PERSONS —IMPLIED OR APPARENT AUTHORITY — PURCHASES — EVIDENCE — SUFFICIENCY. Findings that one M., who converted wheat belonging to the plaintiff, was not acting as agent for the defendant in getting possession and shipping it to defendant, are not sustained by the evidence, and it appears that defendant held M. out as its agent and is responsible for the value of the wheat, where M. had been the defendant's agent for the purpose of buying wheat, maintaining an office as such agent, no notice was given the public of termination of the relation, he was allowed to continue to use signs and stationery as such agent, and to use books appearing to be defendant's books; and upon being intrusted by plaintiff with the custody of the wheat for storage only, stored it separately, plainly marked with plaintiff's name, and made report thereof to defendant on its forms, noting plaintiff's ownership and that it was not yet bought but would be soon, defendant later receiving the same wheat shipped on straight bills of lading to defendant, without having made any advance to M. as customarily, knowing that M. was financially unable to buy it on his own account.

[2] TROVER AND CONVERSION (31)—TAKING NOT WILFUL—MEASURE OF DAMAGES. Where the conversion of wheat was not wilful and was without any element of trespass, the measure of damages is the value at the time of the taking.

Appeal from a judgment of the superior court for King county, Frater, J., entered September 10, 1926,

[1] Reported in 257 Pac. 390.

upon findings in favor of the defendant, in an action for conversion, tried to the court. Reversed.

*John W. Hanna, Stratton & Kane* and *Geo. G. Hannan,* for appellant.

*Roberts & Skeel* and *O. R. Holcomb,* for respondent.

TOLMAN, J.—The appellant as plaintiff brought two actions to recover the value of wheat alleged to have been converted by the defendant. These actions were consolidated and tried together by the court, sitting without a jury, resulting in findings to the effect that the plaintiff had sold and delivered his wheat to one William Mackie, an independent grain dealer, who in turn sold to the defendant, and a judgment of dismissal followed. The plaintiff has appealed.

After a careful study of the evidence, we find ourselves unable to concur in the facts found by the trial court. We are not unmindful of the rule against overturning a finding of fact unless the evidence preponderates against that finding, and are convinced that this is one of those cases where such preponderance exists.

[1] It appears that the following facts are rather conclusively proven. Appellant, a farmer, raised a crop of wheat in 1923, which was harvested and threshed for him by a neighbor named Courtway. Appellant, at that time, was not living on his farm, and he instructed Courtway to deliver the wheat to some warehouse or dealer in Waterville, to be held until the holder of a chattel mortgage thereon should direct its disposition, but told Courtway to use his best judgment as to whom he should make delivery. In years before, appellant had done business with Mackie and knew that his general reputation was good, but apparently he knew nothing about the warehouse capacity Mackie then controlled, or whether he was then the agent of respondent or an independent buyer. Courtway testi-

fied, without contradiction, that he was so directed to make delivery of the wheat at Waterville, that he did so deliver it to Mackie, and advised Mackie that a bank at Wenatchee, some thirty miles distant, had a chattel mortgage on the wheat and that he, Mackie, was to hold the wheat until the bank gave directions for its disposition.

Mackie, at that time, had no regular warehouse at Waterville, was doing business in what is referred to as "the old mill," and it seems to be conceded that his storage facilities there were limited, and that fact was probably known to Courtway. Courtway says that Mackie was then the agent of the respondent and that he delivered the wheat to him as such agent; that on his window was the lettering, "Agency for Kerr-Gifford & Co.," and his testimony, taken as a whole, fully reveals that he had no doubt that he was delivering the wheat to Mackie as respondent's agent. Mackie sent the weight tickets direct to the bank which held the mortgage, and it alone, of the parties then interested in the wheat, seems not to have relied upon the supposed agency. The failure of the banker to testify to a reliance on the agency is probably what misled the trial court. That fact would be important were the bank now suing for the value of the wheat, but it asserts no interest, and since it was not made a party to the action, the presumption is that its mortgage was satisfied and released before the suit was commenced.

It is freely admitted that Mackie had been respondent's agent in Waterville up to June 30 preceding the fall and winter when the wheat was delivered; that, when the agency ceased, no notice was given to the public and no information to that effect reached the appellant or his agent, Courtway. No attempt was made to see that the signs which announced the agency

were obliterated; Mackie was required to turn back the blank forms of drafts which he had used as agent, but he was permitted to retain and use much of the stationery just as he had used it as agent; and when Mackie shipped this particular wheat in the latter part of February following its delivery to him, he procured straight bills of lading (the original of which being sent to respondent immediately upon issuance), which showed shipment by Kerr-Gifford & Co. at Waterville to Kerr-Gifford & Co. at Interbay. Moreover, the books used in Mackie's office bore printed evidence of being the books of Kerr-Gifford & Co., or Kerr-Gifford Warehouse Co., which presumably was closely allied to respondent. Still further, the wheat, when placed in Mackie's building, was piled separately and plainly marked in plaintiff's name and was so marked when shipped to respondent.

There is also in evidence carbon copies of a form bearing the name "Kerr-Gifford Warehouse Co." with the printed direction:

"This form must be used for every car of grain weighed out of the house. Take gross weight only. Send original to Portland office."

And if we correctly understand the testimony, the original of these reports was, at the date of each shipment, sent to respondent. The first of these, in a place left for remarks after the weights have been recorded, gives the number of sacks, the name J. Baumgardner, says that samples have been forwarded under separate cover, and is signed by William Mackie, agent. The second, in the same place, bears the following:

"Remarks. J. Baumgardner T. R.
    Not bought yet but soon.
        William Mackie, Agent."

Still further, respondent admittedly knew that Mackie was financially unable to operate as an inde-

pendent buyer, and that, if he bought independently, it would be necessary for him to get advances on the wheat purchased before he could pay the grower therefor, and that, after June 30, respondent was constantly making such advances to Mackie. This strongly indicates an actual agency, and certainly is a holding out sufficient to warrant a reliance thereon by those situated as was the appellant.

By way of defense to all of these facts tending to establish a holding out to the public of an agency, the respondent presents nothing but the record of transactions between itself and Mackie after June 30, indicating that, as between themselves, the agency had terminated, that Mackie had been paid for this wheat, and also proof of a custom that, in buying from independent dealers, no attention is paid to markings on the sacks indicating from whom the independent dealer obtained the wheat. No doubt a proper custom to be proved in a proper case, but it can have no influence here.

It is not contended that appellant or the bank holding the mortgage ever authorized Mackie to sell the wheat or ever asked for or obtained warehouse receipts. It is also admitted that Mackie was not a licensed warehouseman, and we can see no reason for assuming that appellant authorized or anticipated that the wheat would not remain where its identity could always be ascertained until the mortgagee gave orders to sell it, save only the fact that Mackie's storage space was limited and the time which elapsed between the delivery of the wheat and the demand, which was approximately some twenty months. The delay in ordering a sale or making a demand was satisfactorily explained, and we cannot say that, if Mackie undertook to hold the wheat, as the evidence indicates that he

did, the owner of the wheat was under any legal duty to concern himself about the inconvenience such holding might cause Mackie.

Of course, Mackie disappeared without paying either the mortgagee or the owner for the wheat, and the question now is, Who must bear the loss? It seems to us that respondent negligently permitted a holding out of Mackie as its agent, upon which appellant, acting through his agent Courtway, relied, and reasonably might rely. Indeed, the record discloses nothing to cause even a suspicion to the contrary. The very fact, so much relied upon by respondent, that Mackie's reputation in and about Waterville was good, of itself tended to give confidence that he was what the lettering on his office said he was and what he had theretofore been. We see no escape from the conclusion that, by negligently permitting such holding out, the respondent has placed itself in a position where it cannot escape liability.

[2] The only question remaining to be answered is as to the measure of damages. Appellant contends that he should be allowed the highest price for like wheat which obtained at any time between the delivery and the date of the demand. But the conversion was not wilful, and this court is committed to the doctrine that, where the taking was not wilful and contains no element of trespass, the recovery must be of the value at the time of the taking. *Smith Co. v. Hardin*, 133 Wash. 194, 233 Pac. 628, and cases there cited. The conversion was complete when the wheat was shipped and sold on the Seattle market. We understand the parties are agreed that the then value was 93½ cents per bushel, and if we are correct in our conclusion that there were 2190 bushels, after making deductions for smut and dirt, the amount of recovery is thus fixed.

The judgment appealed from is reversed, and the

cause remanded with instructions to enter judgment in favor of appellant for $2,047.65 and costs.

MACKINTOSH, C. J., MITCHELL, and MAIN, JJ., concur.