[No. 20775.. Department One. November 28, 1927.]

GEORGE STEVENS, *Respondent*, v. WILSON CREEK UNION GRAIN & TRADING COMPANY, INCORPORATED, *Appellant.*[1]

[1] WAREHOUSEMEN (5)—DELIVERY—WRONGFUL DELIVERY AND CONVERSION. A warehouseman's failure, on demand, to pay for or replace wheat stored with him constitutes a conversion, where plaintiff's wheat was commingled with that of others under an agreement that, if sold and shipped out by the warehouseman without replacing it by other wheat of the same grade, it should be paid for, on demand, at the market price.

[2] SAME (5). In such a case, the warehouseman would be guilty of a conversion if he had in storage sufficient wheat of his own at the time of a fire to meet the plaintiff's demand, and refused to deliver it on demand, but collected insurance thereon and converted the proceeds to his own use.

[3] TRIAL (64)—DIRECTION OF VERDICT—OPERATION OR EFFECT OF MOTION. A general demand for a directed verdict on the whole case is properly overruled, where there was sufficient evidence to go to the jury on one of the causes of action.

[4] WAREHOUSEMEN (5) — DELIVERY — WRONGFUL DELIVERY OR CONVERSION—REPLACING. Where wheat, held in a warehouse, is commingled with that of others under an agreement that, if sold and shipped out by the warehouseman without replacing it by other wheat of the same grade, it should be paid for, on demand, at the market price, the fact that a record made of the amount and grade in each bin is kept for the warehouseman's convenience, does not make each bin a separate entity, to be refilled on emptying, but the warehouse is the entity upon the "common mass theory."

[5] TROVER AND CONVERSION (11)—ACTIONS—DEMAND. The sufficiency of a demand upon a warehouseman for wheat stored, before action for a conversion, is immaterial where it is admitted that he would not have complied with any demand.

[6] EVIDENCE (49)—RELEVANCY—MARKET VALUE. The market price of wheat, held and converted at a small station, is properly shown by the prices at some properly established market, and deducting the cost of freight to such market.

[1]Reported in 261 Pac. 399.

[7] Trover and Conversion (36)—Damages—Measure of Damages. Where a warehouseman refuses, on demand, to deliver or pay for wheat stored with him, he is guilty of a wilful conversion, and the measure of damages is the highest price shown between the time of the conversion and the institution of suit.

[8] Trover and Conversion (11)—Warehousemen (5) — Demand— Failure to Deliver Wheat. Under Rem. Comp. Stat., § 7001, a warehouseman, having sold and shipped out wheat stored with him, is entitled to procure and deliver like wheat within fortyeight hours after demand, and hence is not liable for conversion until after demand.

[9] Warehousemen (8) — Actions — Conversion — Instructions. Where a farmer repossessed his wheat during a fire in the warehouse, he cannot claim that the warehouseman converted the wheat through the collection of insurance standing in his own name and refused to pay for the damage to the wheat repossessed by plaintiff; hence it is error to instruct the jury to allow damages on the theory of a conversion, crediting the amount actually received by plaintiff on sale of the damaged wheat.

Appeal from a judgment of the superior court for Grant county, Jeffers, J., entered April 9, 1927, upon the verdict of a jury, rendered in favor of the plaintiff, in an action in tort. Reversed.

*Davis, Heil & Davis,* for appellant.

*Daniel T. Cross,* for respondent.

Tolman, J.—Respondent, as plaintiff, brought this action to recover for the alleged conversion of certain wheat, deposited by him for storage in the warehouse of the appellant, located at Stratford, Washington. The case was tried to a jury, which returned a verdict in favor of the plaintiff for $2,965.07. From a judgment on the verdict, the defendant has appealed.

Errors are assigned upon the refusal of the court to direct a verdict in favor of the appellant and fix the respondent's recovery at the amount which had been tendered into court, which was requested at the close of all the testimony; also, upon certain trial errors

claimed. If the first claim is well taken, that will dispose of the entire case. If not well taken, the other assignments must be considered, and if any be sustained, that will call for a new trial. To determine the first point, requires a review of the evidence in certain particulars.

The appellant is the owner and operator of a large public grain warehouse at Wilson Creek; and eight miles west of Wilson Creek, at the station of Stratford on the Great Northern railroad it, during the time covered by this transaction, operated a small grain elevator, with additional space in a warehouse adjoining. The office of appellant was at all times at Wilson Creek, where all of its records, including those of the Stratford house, were kept. During the season of grain receipts, a man was kept in charge of the Stratford house for the purpose of receiving and shipping out grain and the like, but at other seasons it was inactive and received only something amounting to watchman's care.

In the Stratford house were a number of bins, and, as we gather, one there delivering wheat would deposit it in a receiving hopper, the spout from which was handled on the interior by the man in charge of the warehouse, and shifted so as to deposit the grain in any particular bin which the warehouseman, by reason of its kind and grade, or the necessities of the case, might select.

In the fall of 1923, the respondent, a farmer, operating in the vicinity of Stratford, delivered to appellant's Stratford house 1,583 bushels and 20 pounds of bulk hybrid wheat, and 2,425 bushels of bulk turkey red wheat. All was delivered into the receiving hopper, and the warehouseman placed the hybrid all in bin No. 2, except 145 bushels and 20 pounds, which was

delivered directly into a railroad car for shipment; and, in like manner, the warehouseman directed the delivery of the turkey red wheat, 1,722 bushels in bin No. 1, 560 bushels in bin No. 5, and 143 bushels in bin No. 6. Tickets were issued for each load of wheat as received, giving the weights, etc., and each ticket indicated into what bin the wheat represented thereby had been delivered; but it rather clearly appears that the information as to the bin was placed on the ticket primarily to advise the Wilson Creek office, so that its records might at all times show the amount, kind and grade of wheat in each particular bin, probably for convenience in directing shipments.

As to the hybrid wheat in bin No. 2, it was known to respondent that at least one other was, at the same time, delivering wheat of the same kind and grade, which was being placed in the same bin and commingled with his own. Indeed, respondent does not dispute the appellant's right to commingle in the bins so as to make a common mass of the same kind and grade, and it does not appear to be disputed that both parties understood that, after so depositing, respondent might, at any time, upon paying warehouse charges, receive back grain of the same kind and grade from the common mass, or, at his option, at any time when the market price was satisfactory, he might demand payment for the grain at the then market, less proper warehouse charges, thus making a sale to the appellant.

[1] Respondent pleads that, of the hybrid wheat, 388 bushels and some pounds were afterwards returned to him upon his demand; and, from all of the evidence in the case, the jury might have found that all of the hybrid wheat from bin No. 2 was shipped out shortly after respondent made his deliveries, except 172 bushels and 20 pounds; that, at the time of

such shipment, another was the owner, to some extent, of the common mass of hybrid wheat in that bin, and that the warehouse, after that shipment, never had and received any other hybrid wheat of like grade, save only a small amount later received from the respondent, which is figured in the total heretofore given. It seems apparent that, if the jury did find that there was never afterwards any substantial quantity of hybrid wheat of the same grade in the warehouse to meet respondent's possible demand, and that a demand was made which was not complied with, a conversion has taken place.

[2] The situation with reference to the turkey red wheat is not so clear. There is evidence from which the jury might have found that bins No. 1 and No. 6 were emptied and their contents shipped out soon after respondent's deliveries were completed, and long before the fire hereafter mentioned. There seems to be, however, no evidence that bin No. 5 was so emptied, and very little evidence, if any, that there was not at all times in the Stratford warehouse sufficient turkey red wheat of the same grade to meet every possible demand by the respondent.

On October 18, 1925, appellant's elevator and warehouse at Stratford were destroyed by fire, without fault on its part, and the wheat contained therein was destroyed or damaged. During the fire, respondent went to the warehouse, asserted his claim to wheat therein, and was permitted to salvage and take away 1,045 bushels, all of which was turkey red or its equivalent, apparently, except 18 sacks, which contained hybrid. It seems to be conceded that this wheat so salvaged would have been of the grade called for by respondent's tickets, except only for the damage caused by the fire. After so salvaging, respondent sold this wheat for $1,108.51.

One of the very vital points, and one upon which the record seems to lack something of giving full information, is, Who were the owners of the 9,163 bushels of wheat admittedly in the warehouse at the time it was destroyed? It appears, by the fire adjuster's testimony and written statement, that some 6,200 bushels of this amount belonged to other depositors who had insured, each in his own name, the wheat so deposited. Respondent states, at page 7 of his brief:

"At the time said fire occurred there was in the warehouse 9,163 bushels of wheat (Abst. p. 27) of which said wheat the appellant claimed to be the owner of 2000 bushels, for which it claimed, and was paid the insurance, for its loss."

We find nothing in the abstract to support the statement that appellant, as owner, recovered insurance upon 2,000 bushels of wheat destroyed in the fire, except the testimony of respondent himself, which is:

"A. Well I don't know, right there at the warehouse when he was down there—he was standing there on the porch and I said 'Aint you got insurance to cover all of this wheat' and he kind of hesitated and said 'I got enough for 2000 bushels' and I said 'aint you got blanket insurance to cover all of it' and he said 'it took me all day to show him I had 2000 bushels of wheat in here'—that's about all that was said at that time."

Neither the appellant's manager nor the insurance adjuster was interrogated upon this subject, though both were produced as witnesses. It seems strange that neither party sought to bring out the facts, which should have been easy to establish.

If appellant had in the warehouse, at the time of the fire, 2,000 bushels of wheat, which would have satisfied respondent's demand, and collected the insurance thereon and converted it to its own use, it can hardly claim that wheat to have been respondent's wheat.

Failing, on demand, to deliver to respondent his wheat, appellant cannot now claim that the wheat insured in its own name, upon which it received the insurance, was, when destroyed by fire, respondent's uninsured wheat. If the facts were as indicated by the quoted testimony, then undoubtedly there was evidence to carry the second cause of action to the jury. Without it, the situation is doubtful, and must depend somewhat upon whether each bin in the warehouse is an entity by itself, or whether all of the wheat in the warehouse was a common mass, from which respondent's claims might be met.

[3] But without regard to the uncertainty just mentioned, the motion for an instructed verdict was not directed separately to each cause of action, and as there was sufficient evidence to take the first cause of action to the jury, the motion was, in any event, properly denied. Since there must be a new trial ordered on other grounds hereinafter suggested, we deem it necessary to discuss the law applicable to the second cause of action.

[4] Respondent proceeds upon the theory that each bin in the warehouse was a separate entity, complete in itself, and that a showing of the emptying of any bin in which his wheat, or a portion thereof, was placed was sufficient to take the case to the jury on the conversion of the amount of wheat shown to have been put into that particular bin. We cannot approve that theory.

First, because in a public warehouse, where, presumably, wheat is being received and shipped out at more or less frequent intervals, evidence would be necessary from which the jury might find that the particular emptied bin had not been re-filled to the necessary extent with wheat of the same kind and grade, from which re-filling the depositor's demands might

be met. And, second, under the evidence here and the "common mass" theory, we think the entity is the warehouse, and not the particular bin in the warehouse. In other words, the warehouseman selects the bin for the convenience and from the necessities of the business, and may meet the depositor's demand so long as he delivers the proper kind and grade from any bin in the warehouse which his convenience or necessity dictates. We find nothing in the case of *Trejbal v. Packard Farmers Warehouse Co.*, 124 Wash. 638, 215 Pac. 26, in any wise to the contrary.

It follows that, before there can be a conversion, it must be made to appear that the warehouseman has put himself in a position where he cannot or will not comply with a lawful and proper demand for delivery.

[5] Some question is here raised as to whether a proper demand was made by the respondent, but since it clearly appears, and appellant admits that it would not have complied with a demand, even if such demand fully met all of the terms of the statute (§ 7001, Rem. Comp. Stat.), we need not consider that question further.

[6] We see no error in the admission of evidence as to market price or value. Market price at a place like Stratford can only be determined by taking the price at some properly established market and deducting therefrom the cost of getting the wheat to that market; consequently, the prices at other points similarly situated, where freight rates were the same, or practically so, would enable the jury to arrive at a correct determination of the market price at Stratford. Whether the prices given by the witnesses were for bulk or sacked wheat, differences in freight rates, if any, and the like, could all have been brought out and placed before the jury by proper cross-examination. There being no established market at Stratford, much

must be left to the discretion of the trial court, and we see no abuse of discretion here.

[7] The measure of damages used by the trial court was the highest price shown between the time of the conversion and the institution of the suit. As the conversion did not take place until the demand was made, as we shall hereafter see, and as only some sixty days intervened between the demand and the bringing of the suit, appellant would not have been helped if the court had used what it contends is "the better rule." This is not a case for the application of the rule applied in *Smith Co. v. Hardin,* 133 Wash. 194, 233 Pac. 628, and *Baumgardner v. Kerr-Gifford Co.,* 144 Wash. 206, 257 Pac. 390.

[8, 9] Instruction 2 given to the jury was as follows:

"You are instructed that plaintiff admits that defendant returned to him or delivered on his order 388 bu. 30 lbs. of hybrid wheat, while defendant contends that it delivered to plaintiff or his order 583 bu. 10 lbs. of hybrid wheat and you are therefore instructed that in the event you should find for the plaintiff herein on his first cause of action your verdict should be for the market value, at the time hereinbefore mentioned, of the wheat found to be the difference between 1583 bu. 20 lbs., and whatever number of bushels you shall find by a preponderance of the testimony to have been delivered to plaintiff or his order *or received by plaintiff during the fire.*" [We have italicized the words to which we shall later call attention.]

A similar instruction was given in the second cause of action. (Instruction 4.)

The court then gave an instruction bearing directly on the wheat taken by respondent from the warehouse at the time of the fire, as follows:

"You are instructed that, if you find from the evidence herein that plaintiff Stevens, during or shortly

after the fire, took certain wheat from the warehouse at Stratford claiming it as his wheat and thereafter sold said wheat to the Green Valley Warehouse Co., at Ephrata, Wash., then and in that event defendant should be given credit on whatever amount you find is due plaintiff from defendant, if you find anything due, under his first or second cause of action, for such sum as you find plaintiff received for said wheat, on the other hand should you find that plaintiff's wheat had been converted by defendant, then and in that event plaintiff would be entitled to the market value of the wheat delivered to the Green Valley Warehouse Co., as it was before the fire, in other words before it was damaged by the fire if you find it was damaged, and would not be bound by the price at which the above wheat was actually sold, unless you should also find that the price received for said grain was the same as the market value at the time in these instructions hereinbefore mentioned.''

We do not understand that there was or could have been any conversion in law prior to the demand. The mere emptying of the bin or of the warehouse, while important on the question of the destruction of respondent's wheat by fire, does not establish conversion without the added showing of demand and refusal. Even though appellant had swept all of its bins clean, under the statute (§ 7001, *supra,* as construed in *Patrick v. Farmers Corporation,* 141 Wash. 578, 251 Pac. 872), it was entitled to procure, if it could, and deliver within forty-eight hours after the demand, wheat in the amount, kind and grade deposited. Therefore, while there might have been conversion in fact, there could have been nothing which the law would regard as a conversion at the time of the fire. At that time, respondent, claiming to be the owner of wheat in the burning warehouse, asserted a right to remove it as his own, and was permitted to do so. Having so repossessed himself of his own, he cannot now claim that

it was converted, and the trial court should have followed the theory of instructions 2 and 4 in the subsequent one on the subject of the wheat re-taken by the respondent.

The judgment is reversed and the cause remanded for a new trial.

MACKINTOSH, C. J., PARKER, MITCHELL, and FRENCH, JJ., concur.