[No. 26846.   Department Two.   April 14, 1938.]
MARVIN F. PARKS, *as Executor, Respondent,* v. YAKIMA
VALLEY PRODUCTION CREDIT ASSOCIATION,
*Appellant.*[1]

*Hugo F. Luhman,* for appellant.

*H. A. LaBerge,* for respondent.

[1]Reported in 78 P. (2d) 162.

BEALS, J.—Plaintiff, Marvin F. Parks, has for some years been acting as executor of the will of his deceased mother, Pollia M. Parks, and as such executor was, during the years 1934 and 1935, cultivating a hop ranch belonging to his mother's estate. Defendant, Yakima Valley Production Credit Association, a corporation .(hereinafter referred to as the company), was organized under the farm credit act of 1933, for the purpose of financing its members in their farming operations.

The company advanced plaintiff money to help him raise his 1934 crop of hops; plaintiff, to secure such advances, executed to the company a chattel mortgage on the crop of hops and certain farm implements. The price of hops being low, the hops were placed in storage, and a warehouse receipt was issued therefor, which plaintiff endorsed and delivered to defendant, according to plaintiff's contention, as additional security for the money loaned.

The company again financed plaintiff during the growing season of 1935, taking another mortgage on that crop. The 1934 hops grown by plaintiff were good, but the 1935 crop was of poor quality, only about one-half thereof being marketable. The 1935 hops were at first stored upon a neighboring ranch.

Plaintiff was unable to finance farming operations for 1936, and left his home about April 15th of that year, seeking work in the grain fields and remaining absent until the first of August. The hop market remained stagnant until June, 1936, when, because of rumors that the California hop crop would be short, the demand for Washington hops increased. Shortly thereafter, an offer of ten cents a pound for plaintiff's 1935 hops was made, and defendant sold the hops at this price, also selling the 1934 hops for eleven cents a pound.

The price of hops continued to rise, and after his return to Yakima, plaintiff sued defendant, alleging that defendant had converted his hops and demanding judgment for the difference between the sale price and the market price within a reasonable time after the date of sale, less, of course, the amount due defendant upon its mortgages. Defendant answered, alleging that it was authorized to sell the hops, both by the express terms of the chattel mortgages and by oral authority from plaintiff, and asked for judgment against plaintiff for the balance of the mortgage indebtedness which remained unpaid after the application of the proceeds of the hops.

At plaintiff's request, the court called a jury to assist in determining questions of fact, the jury finding that plaintiff had given defendant no authority to sell either the 1934 or the 1935 hops; that, when the 1934 hops were sold, the market price was ten cents a pound, at which figure the hops were sold; and that, when the 1935 crop was sold, the market price was also ten cents a pound, eleven cents a pound being realized therefor. The jury also found that the defendant did not sell the hops believing in good faith that it had the right to do so, and that it had willfully converted the property; that the highest market value of the 1934 crop within a reasonable time after July 1st was fifteen cents per pound, and that of the 1935 crop, twenty cents per pound.

It was admitted that, after applying the proceeds of the sale on defendant's mortgages, there remained a balance due from plaintiff to defendant of $1,689.08, with interest from January 1, 1937. The only question to be determined was whether or not defendant was liable as for conversion of the hops.

The trial court expressly adopted the findings of the jury, held that defendant had been guilty of con-

verting both crops of hops, and allowed plaintiff judgment for the difference between the sale price and the highest market value of similar hops within a reasonable time after the conversion, which value the trial court fixed at fifteen cents for the 1934 crop and twenty-five cents for the 1935. After giving defendant credit for the balance due upon its chattel mortgages, judgment was entered in plaintiff's favor for something over six hundred dollars, from which judgment defendant has appealed.

Error is assigned upon the ruling of the trial court holding appellant guilty of conversion and awarding respondent damages therefor, and upon the refusal of the trial court to award appellant judgment against respondent for the balance of respondent's indebtedness remaining due after the application thereto of the amount which appellant received for the hops.

Each of the chattel mortgages executed by respondent to appellant provided that it should be lawful for the mortgagee,

". . . with the aid and assistance of any person or persons, to enter the premises or such other place or places as the said goods and chattels are or may be situated, to take possession thereof and dispose of said property by due process of law or the mortgagee may take the said chattels and sell and dispose of the same at the place of taking or elsewhere, at either private or public sale for the best price obtainable as a whole or in parcels and at the same or different times and out of the money arising therefrom, retain and pay the sums hereby secured and interest thereon as aforesaid, and all expenses or charges touching the same, including reasonable attorney's fees, rendering the overplus, if any, unto the said mortgagor;"

and appellant contends that, under the facts as disclosed by the evidence, the trial court erred in holding that appellant, under the facts in the light of the stipulations contained in the mortgages, did not have

the right to sell the hops, but on the contrary was guilty as for conversion thereof.

The evidence clearly indicates that, during the years 1934 and 1935, and until June, 1936, the market price of hops was very low, and that at no time during the period mentioned could respondent's hops have been sold for an amount sufficient to pay appellant's advances.

Appellant claimed the right to sell the hops, relying not only upon the terms of its chattel mortgages, but upon certain evidence which tended to show that respondent had orally authorized appellant to sell the hops.

It clearly appears that appellant made the sales without advising respondent of its intention so to do. Appellant contends that it did not know respondent's address, but the evidence indicates that his address might have been ascertained, had any effort been made to locate him. Appellant, of course, because of its possession of the negotiable warehouse receipt issued for the 1934 hops, could take possession of that crop at any time. The 1935 hops were stored in a barn on a ranch near that operated by respondent. During the month of May, an agent of appellant went to this ranch and demanded the hops, delivery of which was refused, as the owner of the ranch claimed a lien thereon. Later, the owner of the ranch was persuaded to permit appellant to take possession of the hops, which it did.

The memorandum opinion filed by the trial court commences as follows:

"Upon conflicting evidence, the jury in this case has decided all factual matters presented adversely to the defendant and the court accepts the findings of the jury in that respect."

■ As to whether or not respondent had authorized appellant to take possession of the hops and sell them, the evidence is in conflict. On these questions, the jury found against appellant, and its finding was accepted and thereby approved by the trial court. While the findings of the jury were advisory only, the trial court adopted them, save as to one finding hereinafter noted; and in the judgment which was rendered, it is expressly stated that the court adopted the findings of the jury to the effect that the conversion of the hops by appellant amounted to a willful trespass.

The jury fixed the highest market value of the 1935 hops at twenty cents a pound, while the court fixed this value at twenty-five cents a pound, holding that there was no evidence to support the value returned by the jury. Appellant argues that the valuation of this crop of hops fixed by the jury indicates that all the jury desired was to cancel the balance which respondent owed appellant on the mortgages, but this argument weighs little against the jury's findings, in view of the fact that the trial court expressly accepted and approved the same.

Appellant argues that this court should hold that it appears from the preponderance of the evidence that respondent did give appellant oral authority to sell the hops, but we cannot hold with appellant on this phase of the case, in view of the findings of the jury and the adoption thereof by the judge who presided at the trial, and whose duty it was, aided by the jury, to find the facts upon conflicting evidence.

The disputed questions of fact, then, have been determined in favor of respondent, and it has been established that respondent did not make any agreement with appellant to the effect that the latter could, in the exercise of its discretion, sell the hops at any price it deemed reasonable and apply the proceeds upon

the amount due it from respondent; and that, in doing what it did, appellant acted under no authority from respondent, save the terms of the chattel mortgages.

There are two basic theories as to the nature and effect of chattel mortgages. Under the old common law theory, a chattel mortgage operates as a sale, vesting title to the mortgaged property in the mortgagee, subject to defeasance by payment by the mortgagor. Under the other theory, a chattel mortgage operates merely as security for a debt, and vests in the mortgagee no title, but only a lien on the mortgaged property.

This state adopted and has always followed the second or lien theory, and held that, under a mortgage, whether covering real estate or chattels, no title passes, the mortgagee holding only a lien which he may foreclose in the manner provided by law. *Byrd v. Forbes,* 3 Wash. Ter. 318, 13 Pac. 715; *Lahn & Simmons v. Matzen Woolen Mills,* 147 Wash. 560, 266 Pac. 697. The law of this state referring to chattel mortgages confers upon the mortgagee the right to commence foreclosure summarily by notice and sale, or by an action in the superior court. Foreclosure by notice and sale is a summary method, inexpensive and speedy.

Appellant contends that, under the terms of its mortgages above quoted, it had the right to sell the property as it did; and that, in so doing, irrespective of whether or not respondent had by any other agreement or instructions authorized it to sell the property, it was not guilty of conversion. In support of its argument, appellant cites 11 C. J., title "Chattel Mortgages," 560, 590 and 704, and 2 Jones on Chattel Mortgages and Conditional Sales (Bowers ed.), §§ 430, 789.

This court has several times held that a mortgagee cannot maintain replevin to recover possession of

mortgaged property. *Nettleton v. Evans,* 67 Wash. 227, 121 Pac. 54; *Roche Fruit & Produce Co. v. Vaught,* 143 Wash. 601, 255 Pac. 953; *Spokane Security Finance Co. v. Crowley Lumber Co.,* 152 Wash. 697, 279 Pac. 103. In the *Nettleton* case, the defendants had executed a chattel mortgage to plaintiffs. The mortgage provided that, in case of non-payment of the debt secured by the mortgage, or upon certain other conditions, the mortgagee might take possession of the property "wherever the same may be, and immediately proceed to sell the same in the manner provided by law," and from the proceeds pay the debt, together with costs. The mortgagor failing to pay the debt when due, the mortgagee plaintiff instituted replevin for the purpose of obtaining possession of the property. This court held that the mortgagee could not maintain replevin, and in the course of its opinion said:

"The sole question presented is as to the legal effect of the clause above set out in the mortgage. It was held by the trial court that such clause did not have the effect to confer upon the plaintiffs any right to possession of the property, while the appellants contend that such clause conferred upon them the right to take immediate possession upon default, and that, upon refusal of defendants to deliver possession, they can maintain an action in replevin. So that the question becomes largely one of construction of a contract, and we are not aided in any appreciable degree by the cases cited by appellants from this court, as the legitimate deductions therefrom cannot be applied to the particular question involved in this case, or at least they are not necessarily applicable. The exact question, as baldly presented in this case, has never been before this court. However, in *McClellan v. Gaston,* 18 Wash. 472, 51 Pac. 1062, in referring to the attempt of the mortgagee to take possession of mortgaged property under a provision in the mortgage conferring such rights, it was said:

" 'Because a party to a contract violates his contract and refuses to do what he agreed to do, is no reason why the other party to the contract should compel the performance of the contract by force. The adoption of such a rule would lead to a breach of the peace, and it is never the policy of the law to encourage a breach of the peace. The right to an enforcement of this part of the contract must, in the absence of consent on the part of the mortgagor, be enforced by due process of law, the same as any other contract.'

"While that case differs from this in that the possession here is sought to be obtained through legal process, the underlying principle announced was that the provision for taking possession should be construed to be a provision for taking possession in the manner prescribed by the statute. The decision in this case was noted with approval in *Spencer v. Commercial Co.,* 30 Wash. 520, 71 Pac. 53, where it was held that, notwithstanding an agreement in a lease permitting the landlord to take possession by force, the landlord's common law remedy had been abrogated by the statute, and the methods provided by the statute were exclusive remedies.

"Keeping in view the basic idea, that the interest of the mortgagee in the mortgaged property does not rise above a security interest, we think it is consistent to hold that the provision in the mortgage should be construed with reference to the methods provided by statute for subjecting the security to the payment of the debt. The judgment is affirmed."

In the case of *McClellan v. Gaston,* 18 Wash. 472, 51 Pac. 1062, which was an action as for conversion, by the owner of personal property subject to a chattel mortgage against a sheriff who had taken possession of the property, it appeared that one Perry had instituted an action against McClellan for the purpose of foreclosing a chattel mortgage on a stock of goods. The summons and complaint in the foreclosure action were delivered to the sheriff for service, and the sheriff thereupon, over the protest of McClellan, took

possession of the mortgaged goods. Thereafter, Mc-Clellan, the owner of the goods, sued the sheriff, alleging that the seizure of the goods amounted to a conversion thereof. Judgment was rendered in favor of the plaintiff, and the sheriff appealed. The one serious question presented on the appeal concerned instructions given by the trial court to the jury. The chattel mortgage upon which the mortgage· foreclosure was instituted contained the ordinary provision to the effect that, if the mortgagor should fail to pay his note, or if the mortgagee should at any time feel insecure, the latter might take possession of the property, using all necessary force to do so, and proceed to sell the same in the manner provided by law. The trial court instructed the jury that the sheriff, even though the mortgage sought to be foreclosed and pleaded in the sheriff's answer in the case on appeal, was valid and a lien on the goods taken, had no right to take possession of the goods without the consent of the owner, and that the taking against the owner's protest operated in law as a conversion of the property. In the course of its opinion, the court said:

"There is no doubt that such clauses are legitimate in mortgages and confer rights upon the mortgagees, but those rights must be enforced as every other contractual right is enforced. Because a party to a contract violates his contract and refuses to do what he agreed to do, is no reason why the other party to the contract should compel the performance of the contract by force. The adoption of such a rule would lead to a breach of the peace, and it is never the policy of the law to encourage a breach of the peace. The right to an enforcement of this part of the contract must, in the absence of a consent on the part of the mortgagor, be enforced by due process of law the same as any other contract."

It was held that the instructions had properly stated the law, and the judgment against the sheriff was affirmed. The last sentence of the above quotation from the court's opinion clearly lays down the rule that, in the absence of consent by the owner of the property to the taking of possession thereof by the mortgagee, the latter may obtain possession of the property only pursuant to foreclosure by one of the statutory methods.

Appellant cites several Washington cases, commencing with *Sheehan v. Levy,* 1 Wash. 149, 23 Pac. 802. In the case cited, it appeared that a stock of goods owned by one Rostein was mortgaged by Rostein to the plaintiff Sheehan. The mortgage authorized the mortgagee to take possession of the goods and sell the same. The property was turned over to the mortgagee, with Rostein's consent, but thereafter the defendant Levy, who was the sheriff of the county in which the goods were situated, seized the property under attachments issued in actions by other creditors of Rostein. The goods were subsequently sold and lost to Sheehan. He sued the sheriff and recovered judgment for the amount of his debt. This court sent the case back for a new trial because the record contained no evidence of value upon which a judgment in Sheehan's favor could be based, but held in favor of Sheehan upon the points of law involved. As the owner of the goods himself placed the mortgagee in possession thereof, with power to sell, the case is not controlling here.

In the case of *Richter v. Buchanan,* 48 Wash. 32, 92 Pac. 782, which was an action as for conversion by a mortgagor against his mortgagees, it appeared that Richter, the plaintiff and mortgagor, was the owner and in possession of a stock of goods which he mortgaged to Buchanan and others, the defendants in the

action. The mortgage provided that the mortgagees should have possession of the stock of goods, and should sell the same at retail until they had realized a specified amount, with interest, together with such sums as they should have expended in adding to the stock, and fifty dollars a month for services. The opinion states that thereafter the mortgagees, the defendants in the case cited, took possession of the personal property and for six weeks continued to sell the goods at retail, adding to the stock goods of a considerable value; that thereafter, and without the knowledge or consent of the mortgagor, and without foreclosing their mortgage, the mortgagees sold the remainder of the goods in bulk, whereupon the mortgagor sued them as for conversion. It clearly appears that possession of the property was voluntarily turned over by the mortgagor to the mortgagees, and as the court in its opinion states, "The mortgagees were in possession of this property as agents of the mortgagor to dispose of the property in the manner provided in the agreement," and not having disposed of it in that manner, nor in the manner provided by law, it was properly held that the mortgagees were liable to the mortgagor for the value of the property over and above the mortgage debt.

Appellant also cites the case of *Harding v. American State Bank,* 127 Wash. 484, 221 Pac. 599, which was an action by an administrator, based upon two causes of action, alleging conversion. It appeared that the plaintiff's intestate had mortgaged a large amount of property to the bank to secure two notes for five thousand dollars each. After the death of the mortgagor and the appointment of plaintiff as his administrator, as stated by this court in its opinion, the administrator and the bank "considered what was

most advantageous to do for all concerned in regard to the chattel mortgage," the opinion continuing:

"The result of the consideration was that, on October 19, 1920, a public sale was made of the mortgaged personal property, under an arrangement whereby the proceeds of such sale should be applied upon the mortgage debt."

This court stated that the evidence clearly showed that the sale was advantageous, and that the mortgagee, "under the arrangement, was entitled to retain all and apply it upon its mortgage." This court held that,

"The only question in the case is whether the mortgagee in a chattel mortgage is compelled to foreclose his mortgage, or whether he can agree with the administrator of the estate of the mortgagor that foreclosure is not necessary and provide that the mortgaged property may be sold without foreclosure and the proceeds applied upon the debt. In the absence of fraud, undue influence, or some similar inducing cause, and where the sale has resulted beneficially to all concerned, we see no reason why such an arrangement cannot be made."

The case cited, then, concerns an agreement between the mortgagor's personal representative and the mortgagee, pursuant to which the property was sold, and the agreement was properly held binding.

If in the case at bar it had appeared that respondent had authorized appellant to take possession of the hops and sell the same, an entirely different question would be presented, but the trier of the facts determined that question on the evidence against appellant.

Finally, appellant contends that the court erred in adopting the rule which it applied in fixing respondent's measure of damages, in that the conversion by appellant should not be considered willful. It clearly appears that appellant sold the hops at the

market value thereof at the time of sale. If the conversion of the hops was not willful, respondent's measure of damages is the value of the property at the time and place of conversion. As above stated, we are unable to hold that the trial court erred in finding the facts, and it has accordingly been established that appellant's conversion of the hops was willful.

In the case of *Fischnaller v. Sussman,* 167 Wash. 367, 9 P. (2d) 378, an action for damages for the wrongful conversion of personal property, this court said:

"This is not a case where one unintentionally and inadvertently takes or comes into possession of another's property. The appellant gained possession of the respondent's rails willfully and designedly. . . .

"Sussman knew the respondent was the owner of the rails. He knew that no authority had been given to St. Ours or Lang to ship them to Tacoma. Hence, the appellant was not entitled to be reimbursed for the moneys it had advanced for labor and transportation in handling the rails."

This court quoted from the opinion of the supreme court of the United States, in the case of *Wooden-Ware Co. v. United States,* 106 U. S. 432, 27 L. Ed. 230, 1 S. Ct. 398, in which a similar question was considered, and held that the owner of the property converted was entitled to recover the full value of the property at the place where the same was sold by the defendant, without allowing the defendant any deduction for labor and transportation charges.

In the case of *Gunstone v. Chicago M. & P. S. R. Co.,* 79 Wash. 629, 140 Pac. 907, 52 L. R. A. (N. S.) 392, this court held that a conversion of logs by the defendant was inadvertent and not willful. The case is of interest here, as both rules are discussed, and the annotation in the L. R. A. (N. S.) above referred to cites

cases of both states of fact, referring to several in which the rule followed by the trial court in the case at bar was adopted in cases of willful conversion.

In 8 R. C. L., title "Damages," 489, § 49, is found the following text:

"There is authority to the effect that where personal property of a fluctuating value is wrongfully taken or destroyed, the measure of damages is the highest market value within a reasonable time after the property was taken . . ."

In 87 A. L. R. 818, annotation III (supplementing annotation in 40 A. L. R. 1286), we read the following:

"It is pointed out in the earlier annotation that many authorities support the rule that, in actions for conversion of chattels of fluctuating value, the highest intermediate value between the time of the conversion and of the trial may be allowed as the measure of damages;"

several authorities being cited in support of the text.

In 4 Sutherland on Damages (4th ed.), § 1111, authorities holding that, in such a case as this, damages in excess of the market value at the time of conversion may be allowed, are referred to; the same question being discussed in § 1118 *et seq.* This court has several times, in allowing damages in cases of conversion in which was present no element of willful trespass, apparently recognized that a different rule should be applied in cases of willful wrong. *John Smith Co. v. Hardin,* 133 Wash. 194, 233 Pac. 628; *Baumgardner v. Kerr-Gifford & Co.,* 144 Wash. 206, 257 Pac. 390.

In the case of *Stevens v. Wilson Creek Union G. & T. Co.,* 145 Wash. 624, 261 Pac. 399, which was an action to recover damages for the conversion of wheat which plaintiff had deposited for storage, this court said:

"The measure of damages used by the trial court was the highest price shown between the time of the

conversion and the institution of the suit. As the conversion did not take place until the demand was made, as we shall hereafter see, and as only some sixty days intervened between the demand and the bringing of the suit, appellant would not have been helped if the court had used what it contends is 'the better rule.' This is not a case for the application of the rule applied in *Smith Co. v. Hardin,* 133 Wash. 194, 233 Pac. 628, and *Baumgardner v. Kerr-Gifford Co.,* 144 Wash. 206, 257 Pac. 390."

In many jurisdictions in which exemplary damages are allowed, a recovery in plaintiff's favor in actions for willful trespass may be increased by the inclusion of punitive damages. The cases of *Polykranas v. Krausz,* 73 App. Div. 583, 77 N. Y. S. 46; *Ayers v. Hobbs,* 41 Ind. App. 576, 84 N. E. 554; *Sunnyside Coal & Coke Co. v. Reitz,* 14 Ind. App. 478, 39 N. E. 541, 43 N. E. 46; *Benjamin v. Benjamin,* 15 Conn. 347, 39 Am. Dec. 384; *Franklin Coal Co. v. McMillan,* 49 Md. 549, 33 Am. Rep. 280; *Symes v. Fletcher,* 95 Vt. 431, 115 Atl. 502; *Green v. Laclair,* 89 Vt. 346, 95 Atl. 499, support the rule contended for by respondent.

Under the law of this state, exemplary damages may not be allowed in an action for conversion, but we are clearly of the opinion that, in the case at bar, the trial court properly based respondent's damages upon the highest market price of the hops within a reasonable time after the date of conversion.

We find no basis in the record for reversing or modifying the judgment appealed from, and the same is accordingly affirmed.

STEINERT, C. J., BLAKE, ROBINSON, and MILLARD, JJ., concur.