[No. 26890. Department Two. May 17, 1938.]

ANTONIO LEMAIRE et al., *Appellants*, v. YAKIMA VALLEY PRODUCTION CREDIT ASSOCIATION, *Respondent*.[1]

*H. A. LaBerge* and *Paul M. Goode,* for appellants.

*Hugo F. Luhman,* for respondent.

MILLARD, J.—Antonio Lemaire was engaged in 1935 in raising hops on land he was purchasing under an executory contract from the Moxee Company. Lemaire executed a first mortgage to the Yakima Valley Production Credit Association upon the crops and all of his farm machinery and other personal property to secure the payment of funds advanced by the credit association to finance Lemaire in the production of hops. At this time, Lemaire was in default under his land contract and was also indebted to a number of

[1]Reported in 79 P. (2d) 693.

merchants in Moxee City. A second mortgage was executed by Lemaire upon the crop and his personal property to P. A. Regimbal, as trustee, to secure the payment of his indebtedness to those merchants. When the hops were harvested in the fall of 1935, they were stored in a hop kiln upon Lemaire's farm to be held for an advance in price, as the market price for hops at that time was too low to pay both mortgages.

In the fall of 1935, the default of Lemaire in making payments under his land contract resulted in notice by the Moxee Company of forfeiture of the contract. Thereupon, Lemaire executed a quitclaim deed of the land to the Moxee Company under an oral agreement that the latter would sell the land to Lemaire as soon as he acquired sufficient money for that purpose.

When in June, 1936, the hop market became active, the credit association sold the hops, which were stored on Lemaire's farm, to Harry Schott for ten cents a pound and executed a sales slip therefor. When the purchaser called on Lemaire the next day about seven a. m., the latter refused to make delivery, insisting that he had not sold the hops. A few hours subsequently, Schott, accompanied by a representative of the credit association, returned to the farm and demanded that Lemaire deliver the hops to him. The testimony of Lemaire regarding the conversation he had at this time with the representative of the credit association reads as follows:

"He told me I have to deliver the hops. I said I didn't sell my hops. He said, 'Sure, you sold your hops.' He had big bunch of papers. He try to find a paper like I sign. I told you. 'You have to foreclose hops.' I was in the hay stack. He try to furnish slip, but he can't find it, so he went off, too. He went to see Mr. Marsh, but then Mr. Marsh wasn't in the field. He came back about an hour later. Then he wasn't in the field. I told the man who was working with me then, 'They talk every way, but they don't get

my hops, I know that.' I was so excitable I lost about half of my head, I think."

Later the same day, the purchaser of the hops, his brother, a representative of the defendant, and the president of the Moxee Company, from whom Lemaire was purchasing the land on which the hops were raised, called on Lemaire. After some conversation between the parties, Lemaire unlocked the hop kiln and showed the parties the bales of hops. Lemaire testified that he unlocked the warehouse and permitted the hops to be taken therefrom, as he was convinced by the president of the Moxee Company, from whom he was purchasing the land, that the hops had been sold and that he had no right to object to the sale.

The day following the taking of the hops, Lemaire advised the second mortgagee what had occured. Immediately a tender was made to the purchaser and to the credit association of an amount in excess of that which was necessary to pay the first mortgage on the hops. The tender was refused, whereupon Lemaire and the second mortgagee instituted this action against the credit association (the first mortgagee) to recover the highest market value of the hops within a reasonable time after their alleged conversion. The cause was tried to the court and an advisory jury. In answer to interrogatories, the jury found that Lemaire did not authorize, or consent to, the sale of the hops by the defendant; that defendant did not sell the hops believing in good faith that it had the right to do so; and that the defendant wilfully converted the property. The jury returned a verdict in favor of the plaintiffs in the amount of $1,517. Disregarding the advisory verdict, the court expressed the view that, by virtue of the following provision in the chattel mortgage, the defendant had the legal right to take the hops and sell them at private sale without foreclosure of the mort-

gage, and entered a judgment dismissing the complaint, and awarded defendant judgment for the balance of the mortgage debt in the amount of $271.22 and a foreclosure of the mortgage:

"But if default be made in the payment of said principal sum of money or any instalment of principal or of interest thereon, . . . then it shall be lawful for, and the said mortgagor does hereby authorize and empower the said mortgagee to declare the whole of the indebtedness hereby secured at once due and payable, and with the aid and assistance of any person or persons, enter the premises or such other place or places as the said goods and chattels are or may be situated, to take possession thereof and dispose of said property by due process of law or the mortgagee may take the said chattels and sell and dispose of the same at the place of taking or elsewhere, at either private or public sale, for the best price obtainable as a whole or in parcels and at the same or different times and out of the money arising therefrom, retain and pay the sums hereby secured and interest thereon as aforesaid, and all expenses or charges touching the same, including reasonable attorney's fees, returning the overplus, if any, unto the said mortgagor."

From this judgment, the plaintiffs have appealed.

The court did not make any findings of fact, nor did it find in its memorandum opinion that the jury was not warranted in answering the interrogatories as recited above. The basis of the decision is that, since possession of the hops was obtained peaceably, under the above-quoted provision of the chattel mortgage the respondent mortgagee was authorized to sell the hops.

Our examination of the record discloses that Lemaire has difficulty in speaking and understanding the English language; and that, as alleged by him in his complaint, he was induced by the representations of the respondent's representative and influenced by the president of the company from whom he was purchas-

ing the land, to believe that the respondent could sell the hops over his objections, and that he had no right to refuse delivery to one purchasing the hops from respondent. Lemaire did not authorize or consent to the sale of the hops by the respondent.

The next question is whether, in the absence of consent by the defaulting mortgagor, a mortgagee may, under the above-quoted provision of the chattel mortgage, sell the mortgaged property without following the statutory foreclosure procedure.

It is the public policy of this state that a mortgage is only a lien which the mortgagee may foreclose in the manner provided by law; and that, in the absence of consent by the mortgagor to the taking of possession by the mortgagee of the mortgaged property, the mortgagee may not obtain possession of the property other than by one of the methods prescribed by the statute. In *Parks v. Yakima Valley Production Credit Ass'n, ante* p. 380, 78 P. (2d) 162, we reviewed the authorities and held that, under facts like those in the case at bar, in the absence of consent by the owner of the mortgaged property to the taking of possession of the property by the mortgagee, the latter may obtain possession of the property only pursuant to foreclosure by one of the statutory methods.

The final question is the measure of damages. In this action, which is one for conversion, the appellants are entitled to recovery of damages based upon the highest market price of hops within a reasonable time after the conversion. *Parks v. Yakima Valley Production Credit Ass'n, ante* p. 380, 78 P. (2d) 162.

The judgment is reversed, and the cause remanded with direction to the trial court to proceed in accordance with the views herein expressed.

STEINERT, C. J., BEALS, ROBINSON, and BLAKE, JJ., concur.