[No. 23296. Department One. January 18, 1932.]

NELS NELSON, *Respondent*, v. EASTERN RAILWAY & LUMBER COMPANY, *Appellant*.[1]

*C. D. Cunningham,* for appellant.

*Allen, Froude, Hilen & Askren* and *Hull & Murray,* for respondent.

BEELER, J.—The respondent brought this action to recover damages for the destruction and injury to personal property caused by fire. Prior to and on October 2, 1929, the respondent was conducting a logging operation in the S. E. ¼ of section 4, township 14 north, range 1 west, in Lewis county, Washington. The appellant owns section 5, lying immediately to the west, and section 9, lying immediately to the south, of section 4, together with a portion of section 8, lying south

[1] Reported in 6 P. (2d) 1111.

of section 5 and west of section 9. The respondent in his pleadings alleged that the appellant on October 2, during the dry season of the year, started a fire on certain slashings or logged-off lands, and that it carelessly and negligently failed to keep the fire under control, with the result that it spread onto section 4, and destroyed approximately 119,000 feet of felled logs or timber, and damaged his logging equipment, consisting of about one mile of railway, two donkey engines, spar trees and sleds, together with various tools and implements.

The appellant at different stages of the proceedings filed three answers: Its first answer was verified May 8, 1930, wherein it admitted having started a fire on section 9; its second answer was verified December 27, 1930, in which it admitted having started a fire on sections 5 and 9; its third answer was verified January 12, 1931, and filed on the morning of the trial, in which, *for the first time,* it denied that it started a fire on section 9. The appellant in its original and in its first amended answer alleged that someone, without authority and without right, on October 3, started a fire in the S. W. ¼ of section 4, while in its second amended answer it alleged that a fire was started on the W½ of the W½ of section 4. It further alleged in its pleadings that the respondent knew that a fire had been started on section 4, but negligently failed to protect his property; and further alleged that, on the afternoon of October 3, an unprecedented wind arose from the southwest which made it impossible to guard and keep the fire from spreading.

A trial to the court and a jury resulted in a verdict in favor of the respondent in the sum of $4,132, which was reduced to $2,700 by the trial court at the time of the hearing on the motion for a new trial. Judgment was entered on the verdict, and this appeal followed.

The appellant unsuccessfully challenged the sufficiency of the evidence, and now contends that the court erred in denying its motion for nonsuit. It further contends that the respondent was guilty of contributory negligence, in that he failed to exercise due care to prevent the fire from spreading onto his premises, and failed to guard or protect his logging equipment; and that therefore the court erred in submitting to the jury the claimed items of damage for the injury to his logging railroad grade and bridges and logging equipment.

It is conceded by the parties that the fires which were started on sections 5 and 8 were not communicated to the respondent's property. The proof presented two vital questions of fact to be determined: first, whether the fire that spread onto the respondent's premises came from section 9 or from section 4; second, whether the respondent was guilty of contributory negligence in failing to exercise due care to prevent the fire from spreading onto his premises or in failing to guard his logging equipment. These were questions to be determined by the jury under all the facts and attendant circumstances. We are satisfied from our perusal of the record that the evidence, if believed, is ample to support the verdict.

Error is next assigned on the ruling of the court in striking certain testimony of the appellant's witness Fettus, and in refusing to permit him to further testify concerning a particular conversation which the appellant contends took place between the witness and several men whom he saw on respondent's premises about 12:30 p. m. of October 4, shortly after the fire had completely passed over the latter's premises. Fettus testified in part:

"A. I asked them collectively what they were going to do, and the first remark—that was voiced by more

than three—*you understand I cannot tell you who they were,* was, 'We are not going to do anything. Nelson is ruined and the Eastern will have to pay for it.' 'Well,' I said, 'We will go and see what we can do.' Some one man spoke up and he said he was hook tender and left in charge, and him and I with what crew I had taken over went up as far as the first bridge that was burned out there, and I said, right here we will start a fire, and he said 'Who are you, anyhow, are you a fire warden?' I remarked it did not make any difference, we were going to fire, a back fire.''

Thus it will be seen that the witness was unable to identify by name or in any other definite manner the person or persons with whom he had the conversation. The purpose of the testimony relating to the conversation was to show the attitude of those in charge of the respondent's logging operations as bearing on the question whether they had exercised due care and diligence so as to prevent the fire from spreading onto the respondent's property. Even if we should concede that the evidence was admissible as a part of the *res gestae,* it was incompetent, and hence inadmissible, for the purpose of showing the attitude of the men from October 2 up to the time the fire reached the respondent's premises, as a basis of proving that they had failed to exercise due precaution to combat the fire.

 The appellant next contends that the court erred in admitting evidence as to the market value of the felled logs or timber which was destroyed by fire. The evidence is undisputed that 119,000 feet of logs or timber were destroyed by fire. The respondent introduced testimony to prove that the city of Aberdeen was the most available market to ship logs to, and that the net market value at Aberdeen was $8.93 per thousand. The appellant argues that the respondent should have been restricted in his proof to the fair market

value of the logs at the *place* of their destruction, or, in any event, to their market value at Mendota.

Manifestly, there was no market value for the logs at the place they were situated at the time of the fire, unless, of course, one had the necessary equipment to remove them to an available market. Neither should the respondent's testimony have been restricted to the establishment of the market value of logs at Mendota, which is a small coal mining town situated near respondent's logging operations, and wholly without a market for logs or timber. A somewhat similar situation was presented in the case of *Stevens v. Wilson Creek Union Grain & T. Co.*, 145 Wash. 624, 261 Pac. 399. We there said:

"We see no error in the admission of evidence as to market price or value. Market price at a place like Stratford can only be determined by taking the price at some properly established market and deducting therefrom the cost of getting the wheat to that market; consequently, the prices at other points similarly situated, where freight rates were the same, or practically so, would enable the jury to arrive at a correct determination of the market price at Stratford."

8 R. C. L., p. 489, states the rule as follows:

"Generally the value of property taken or destroyed is to be determined as of the time and place of its taking or destruction. In case there is no local market, the value is properly fixed by the value at the nearest market, deducting the cost of transportation, and this is true though the owner did not intend to sell the property, . . ."

See, also, 22 C. J. 189.

■ The appellant next contends that the trial court erred in giving a portion of instruction No. 21 and in refusing to give its requested instruction No. 13. That part of instruction No. 21 which is criticized reads:

"You are instructed that in the event that you should find from the evidence that the plaintiff is en-

titled to recover of the defendant, it will be your duty to determine the amount of damage or loss you may believe from the evidence that the plaintiff has sustained, if any, as the result of the fire; and, in determining such loss, if any, you are to find and allow only such sum as you believe from the evidence was the fair cash market value of the property destroyed by fire on the 4th of October, 1929, provided such article or thing had a market value; *But on repairs to donkey engines, spar tree and sleds, if you find said donkey engines, spar tree and sled were damaged, you will allow the reasonable value of the repairs, where the article used in the repairs had no market value, if you find repairs were necessary to be made, to place the said donkey engines, spar tree and sled, in practically the same condition as they existed immediately before the damage, that is, immediately before the fire.*" (Italics ours.)

In the unitalicized portion of the instruction, which in many respects is similar to the appellant's requested instruction No. 13, the jury were told that, in determining the amount of the award or damages, they might take into consideration the fair cash *market* value of the property *destroyed* by the fire. The appellant concedes that to be a correct statement of the law. Its principal criticism is directed to the italicized portion of the instruction which relates only to the repairs to the donkey engines, spar trees and sleds. In that regard, the jury were told that they might allow the *reasonable* value of the repairs where the articles used in making the repairs had no market value. For example, a piece of timber might be necessary to repair a sled, and the timber used might not necessarily have a market value. We are satisfied that the instruction stated the law accurately.

Judgment affirmed.

TOLMAN, C. J., PARKER, MITCHELL, and MILLARD, JJ., concur.